**Exhibit E**

**Liquidation Analysis**

**Liquidation Analysis**[1]

A.   <u>Introduction</u>

Often referred to as the "best interests" test, section 1129(a)(7) of the Bankruptcy Code requires that the Bankruptcy Court find, as a condition to Confirmation of the Plan, that each Holder of an impaired Claim or Interest must either (a) accept the Plan or (b) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such non-accepting Holder would receive or retain if the Debtors' assets were to be liquidated under chapter 7 of the Bankruptcy Code on the Effective Date. In analyzing whether the best interests test has been met, the dollar amount that would be generated from a hypothetical liquidation of the Debtors' assets in a chapter 7 proceeding must be determined.

This hypothetical liquidation analysis ("<u>Liquidation Analysis</u>") was prepared by the Debtors, with assistance from Alvarez & Marsal LLP and their other advisors, and represents the Debtors' best estimate of the cash proceeds, net of liquidation-related costs, which would be available for distribution to the Holders of Claims and Interests if the Debtors' assets were to be liquidated pursuant to a chapter 7 proceeding.

The Liquidation Analysis sets forth an estimated range of recovery values for each Class of Claims and Interests upon disposition of assets pursuant to a hypothetical chapter 7 liquidation. As illustrated by this Liquidation Analysis, Holders of Claims or Interests in Impaired Classes and Holders of Claims in certain Unimpaired Classes that would receive a full recovery under the Plan would receive a lower recovery in a hypothetical liquidation than they would under the Plan. Further, no Holder of a Claim or Interest would receive or retain property under the Plan of a value that is less than such Holder would receive in a chapter 7 liquidation. Accordingly, and as set forth in greater detail below, the Debtors believe that the Plan satisfies the "best interests of creditors" test set forth in section 1129(a)(7) of the Bankruptcy Code.

To conduct the Liquidation Analysis, the Debtors and their advisors have:

- estimated the cash proceeds (the "<u>Liquidation Proceeds</u>") that a chapter 7 trustee (the "<u>Trustee</u>") would generate if each Debtor's Chapter 11 Case were converted to a chapter 7 case and the assets of such Debtor's Estate were liquidated or sold;

- determined the distribution (the "<u>Liquidation Distribution</u>") that each Holder of a Claim or Interest would receive from the Liquidation Proceeds under the priority scheme dictated in chapter 7 of the Bankruptcy Code; and

---

[1]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the *Disclosure Statement Relating to the Joint Prepackaged Plan of Reorganization of Wheel Pros, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as may be amended, supplemented, or otherwise modified from time to time, and including all exhibits and supplements thereto, the "<u>Disclosure Statement</u>"), to which this Liquidation Analysis is attached as **Exhibit E**, or the *Joint Prepackaged Plan of Reorganization of Wheel Pros, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as may be amended, supplemented, or otherwise modified from time to time, and including all exhibits and supplements thereto, the "<u>Plan</u>"), attached to the Disclosure Statement as **Exhibit A**.

- compared each Holder's Liquidation Distribution to the estimated distribution under the Plan (the "Plan Distribution") that such Holder would receive if the Plan were confirmed and consummated.

As the Liquidation Analysis is a hypothetical analysis based on certain assumptions, certain aspects may vary from the Plan, as discussed in the Disclosure Statement, including asset values. The Liquidation Analysis is based upon certain estimates and assumptions discussed herein and in the Disclosure Statement, which should be read in conjunction with the Liquidation Analysis.

**THE INFORMATION SET FORTH IN THIS LIQUIDATION ANALYSIS IS SUBJECT TO MODIFICATION AND SUPPLEMENTATION BY THE DEBTORS AT ANY TIME PRIOR TO THE CONFIRMATION HEARING. THERE CAN BE NO ASSURANCE THAT THE VALUES REFLECTED IN THE LIQUIDATION ANALYSIS WOULD BE REALIZED IF THE DEBTORS WERE, IN FACT, TO UNDERGO SUCH A LIQUIDATION UNDER CHAPTER 7, AND ACTUAL RESULTS COULD VARY MATERIALLY FROM THOSE ESTIMATED HERE.**

B. Basis of Presentation

The Liquidation Analysis has been prepared assuming that the Debtors converted their Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code on or about October 31, 2024 (the "Conversion Date"). The pro forma values referenced herein are projected as of October 31, 2024. The Debtors assume the Conversion Date to be a reasonable proxy for the projected Effective Date of the Plan. The Liquidation Analysis was prepared on an entity-by-entity basis and summarized into a consolidated report. Asset recoveries accrue first to satisfy Claims at the legal entity level. To the extent any remaining value exists, it flows to each individual entity's parent organization or appropriate shareholder. In addition, the Liquidation Analysis includes an analysis of the recovery of prepetition Intercompany Claims and Intercompany Interests.

The Liquidation Analysis represents an estimate of recovery values and percentages based on a hypothetical liquidation if a chapter 7 trustee were appointed by the Bankruptcy Court to convert assets into Cash. The determination of the hypothetical proceeds from the liquidation of assets is a highly uncertain process involving the extensive use of estimates and assumptions that, although considered reasonable by the Debtors' management team and their advisors, are inherently subject to significant business, economic, and competitive uncertainties, and contingencies beyond the control of the Debtors and their management team. Inevitably, some assumptions in the Liquidation Analysis may not materialize in an actual chapter 7 liquidation, and unanticipated events and circumstances could materially affect the ultimate results in an actual chapter 7 liquidation.

The Liquidation Analysis was prepared for the sole purpose of generating a reasonable, good faith estimate of the proceeds that would be generated if the Debtors' assets were liquidated in accordance with chapter 7 of the Bankruptcy Code. The Liquidation Analysis is not intended and should not be used for any other purpose. The underlying financial information in the Liquidation Analysis and values stated herein have not been subject to any review, compilation, or audit by any independent accounting firm. As a result, the value of the Debtors' assets in a liquidation scenario is uncertain and could vary significantly from the values set forth in the

Liquidation Analysis. In addition, the actual amount of Claims that would ultimately be Allowed against the Debtors' Estates could vary significantly from the estimates stated herein, depending on the nature and amount of Claims asserted during the pendency of the chapter 7 case.

To estimate the liquidation proceeds, the Liquidation Analysis assumes that the Debtors and their subsidiaries, utilizing their resources and necessary third-party advisors, are wound down during a 6-month wind-down period (the "Liquidation Period"), in which the assets of the Debtors and their subsidiaries are sold in a straight liquidation during the first three months through an accelerated sale process. There can be no assurance that the liquidation would be completed in a limited time frame, nor is there any assurance that the recoveries assigned to the assets would in fact be realized. The Liquidation Analysis is also based on the assumptions that: (i) the Debtors have continued access to cash collateral during the course of the Liquidation Period to fund certain Wind-Down Expenses (as defined below) and (ii) operations, accounting and finance, treasury, IT, and other management services needed to wind down the Estates continue. In addition to expenses required to liquidate certain assets, the Debtors anticipate that they would pay certain limited personnel to finalize and bill for unbilled revenue as well as organize an orderly exit of retail, warehouse, and corporate personnel. Liquidation proceeds available for distribution to Holders of Claims and Interests would consist of the net proceeds.

The cessation of business in a liquidation is likely to trigger certain Claims that otherwise would not exist under the Plan. The Liquidation Analysis includes an estimate of these Claims, but actual Claims could be significantly greater. The Liquidation Analysis does not include estimates for the federal and state tax consequences that may be triggered upon the liquidation in the manner described above. Such tax consequences may be material. In addition, the Liquidation Analysis does not include recoveries resulting from any potential preference, fraudulent transfer, or other litigation or avoidance actions.

In preparing the Liquidation Analysis, the Debtors estimated Allowed Claims based upon a review of the Debtors' financial statements to account for other known liabilities, as necessary. In addition, the Liquidation Analysis includes estimates for Claims not currently asserted against the Debtors, but which could be asserted and Allowed in a chapter 7 liquidation, including chapter 7 administrative claims such as wind-down costs, Trustee fees, and other expenses related to the wind-down process (together, the "Wind-Down Expenses"). To date, the Bankruptcy Court has not estimated or otherwise fixed the total amount of Allowed Claims used for purposes of preparing this Liquidation Analysis. Therefore, the Debtors' estimate of Allowed Claims set forth in the Liquidation Analysis should not be relied on for any other purpose, including determining the value of any distribution to be made on account of Allowed Claims and Interests under the Plan. NOTHING CONTAINED IN THE LIQUIDATION ANALYSIS IS INTENDED TO BE OR CONSTITUTES A CONCESSION OR ADMISSION OF THE DEBTORS. THE ACTUAL AMOUNT OR PRIORITY OF ALLOWED CLAIMS IN THE CHAPTER 11 CASES COULD MATERIALLY DIFFER FROM THE ESTIMATED AMOUNTS SET FORTH IN THE LIQUIDATION ANALYSIS.

C. Liquidation Process

The Debtors' hypothetical liquidation would be conducted pursuant to chapter 7 of the Bankruptcy Code, with the Trustee managing the Estates to maximize recovery in an expedited process. The Trustee's initial step would be to develop a liquidation plan to generate proceeds from the sale of entity-specific assets for distribution to creditors. The three major components of the liquidation are as follows:

1. Generation of Cash proceeds:

   - Collection of customer proceeds associated with items already reflected in accounts receivable as of the Conversion Date.

   - Liquidation of inventory and Property, Plant, & Equipment (the "PP&E") assets owned by the Company.

   - Monetization of certain intangible assets, such as the Debtors' brands.

2. Costs related to the liquidation process, including Wind-Down Expenses, corporate support, retention, rent, utilities, other costs, Trustee fees, and other professional and broker fees.

3. Distribution of net proceeds generated from asset sales to Holders of Claims and Interests in accordance with the priority scheme under chapter 7 of the Bankruptcy Code.

D. Distribution of Net Proceeds to Claimants

Any available net proceeds would be allocated to Holders of Claims against the Debtors in accordance with section 726 of the Bankruptcy Code—for example, the priority scheme applicable in a chapter 7 proceeding.

Professional fees, Trustee fees, administrative expenses, priority Claims, and other such Claims that may arise in a liquidation scenario would have to be fully paid from the Liquidation Proceeds before any proceeds are made available to Holders of General Unsecured Claims. Under the priority scheme dictated in chapter 7 of the Bankruptcy Code, no junior creditor would receive any distributions until all senior creditors are paid in full, and no equity holder would receive any distribution until all creditors are paid in full. The assumed distributions to creditors as reflected in this Liquidation Analysis are estimated in accordance with the priority scheme dictated in chapter 7 of the Bankruptcy Code, as follows:

1. Wind Down Costs – the Wind-Down Expenses and other costs related to winding down business operations, including estimated Trustee fees and certain other professional and broker fees, among additional wind-down costs.

2. Debtor-in-Possession Financing – the DIP Loans made by the lenders party to the DIP ABL Credit Agreement, and DIP Term Loan Credit Agreement consisting of (i) an up to $175 million DIP ABL Facility and (ii) $110 million DIP Term Loan Facility, respectively.

4

The DIP ABL Facility is assumed to be drawn to $143 million, inclusive of $10 million release of availability block and $18 million letters of credit fully rolled up. Claims for both DIP Facilities assume all accrued interests and upfront fees has been paid prior to the Conversion Date.

3. <u>FILO Claims</u> – Secured Claims arising under the Debtors' FILO Loans. All Claims are assumed to include accrued interest as of the Petition Date.

4. <u>First Lien Claims</u> – Secured Claims arising under the Debtors' secured first lien credit facilities, which include loans arising under the (i) NewCo First Lien Credit Agreement, (ii) Legacy First Lien Credit Agreement, and (iii) Intercompany Credit Agreement, if any. All Claims are assumed to include accrued interest as of the Petition Date.

5. <u>NewCo Notes Claims</u> – Secured Claims arising under the Debtors' secured credit facilities include the NewCo Notes Claims. All Claims are assumed to include accrued interest as of the Petition Date.

6. <u>Administrative & Other Priority Claims</u> – include, but are not limited to, Claims as a result of (i) postpetition trade claims, (ii) Priority Tax Claims, and (iii) Professional Fee Claims. The Liquidation Analysis assumes that professional fees are funded through a Professional Fee Escrow Account, which results in Cash being set aside to pay Professionals.

7. <u>Legacy Notes Claims & General Unsecured Claims</u> – Legacy Notes Claims are unsecured Claims arising under the Debtors' Legacy Notes. All Claims are assumed to include accrued interest as of the Petition Date. General Unsecured Claims include, but are not limited to, (i) secured debt deficiency Claims, (ii) global pre-petition trade Claims, (iii) contract rejection Claims, (iv) deferred revenue, (v) prepetition litigation Claims, (vi) customer program Claims, (vii) tax service provider Claims, and other unsecured Claims.

E.  <u>Conclusion</u>

The Debtors have determined, as summarized in the following analysis, upon the Effective Date, the Plan will provide all Holders of Claims and Interests with a recovery (if any) that is not less than what such Holders would receive pursuant to a liquidation of the Debtors under chapter 7 of the Bankruptcy Code, and as such believe that the Plan satisfies the requirement of section 1129(a)(7) of the Bankruptcy Code.

[*Remainder of page intentionally left blank*]

## Summary of Projected Claims and Recoveries

The following table compares estimated class recoveries under the Plan and the mid-scenario of the Liquidation Analysis:

| *In USD 000s* Class | Class Claim / Interest | Plan Treatment | Claim $ Mid | Estimated Recovery Under the Plan (%) | Recovery Under Hypothetical Liquidation (%) Mid |
|---|---|---|---|---|---|
| Superpriority | DIP ABL Facility | Unimpaired | $ 143,289 | 100% | 71% |
| Superpriority | DIP Term Loan Facility | Unimpaired | 110,436 | 100% | 71% |
| Class 1 | Other Secured Claims | Unimpaired | - | 100% | --% |
| Class 2 | Other Priority Claims | Unimpaired | 153,843 | 100% | --% |
| Class 3 | ABL Claims | Unimpaired | - | 100% | --% |
| Class 4 | FILO Claims | Unimpaired | 238,388 | 100% | --% |
| Class 5 | First Lien Claims | Impaired | 2,307,231 | 53% | --% |
| Class 6 | Junior Funded Debt Claims | Impaired | 3,281,043 | 0.1% | --% |
| Class 7 | General Unsecured Claims | Unimpaired | 54,231 | 100% | --% |
| Class 8 | Intercompany Claims | N/A | 51,299 | N/A | --% |
| Class 9 | Intercompany Interests | N/A | - | N/A | --% |
| Class 10 | Existing Equity Interests | Impaired | - | 0% | --% |
| Class 11 | Section 510(b) Claims | Impaired | - | 0% | --% |

[*Remainder of page intentionally left blank*]

6

## Liquidation Analysis

The Liquidation Analysis was prepared on an entity-by-entity basis for all liquidating entities. The following table provides a summary of Liquidation Analysis on a consolidated basis. The Liquidation Analysis should be read in conjunction with, and is qualified in its entirety by, the associated notes.

| *In USD 000s, unless otherwise noted*<br>**Gross Liquidation Proceeds:** | Notes | Pro Forma | Recovery % Low | Recovery % Mid | Recovery % High | Recovery $ Low | Recovery $ Mid | Recovery $ High |
|---|---|---|---|---|---|---|---|---|
| Cash | [1] | $ 9,967 | 100.0% | 100.0% | 100.0% | $ 9,967 | $ 9,967 | $ 9,967 |
| Restricted cash | [2] | 5,218 | - | - | - | - | - | - |
| Accounts receivable, net | [3] | 93,928 | 28.3% | 47.1% | 66.0% | 26,540 | 44,226 | 61,989 |
| Inventories | [4] | 279,904 | 37.7% | 46.3% | 55.0% | 105,450 | 129,679 | 153,907 |
| Prepaid expenses and other | [5] | 17,330 | - | - | - | - | - | - |
| PP&E | [6] | 43,271 | 23.5% | 33.3% | 43.0% | 10,185 | 14,394 | 18,602 |
| Right of use assets | [7] | 98,668 | - | - | - | - | - | - |
| Goodwill | [8] | 312,950 | - | - | - | - | - | - |
| Intangible assets, net | [8] | 301,622 | - | - | - | - | - | - |
| Deposits and other assets | [9] | 6,212 | - | - | - | - | - | - |
| Intercompany Receivable / Payable | [10] | 15,433 | - | - | - | - | - | - |
| Investment in subsidiary | [11] | 491 | - | - | - | - | - | - |
| Intellectual Property | [12] | 204,865 | 4.2% | 9.8% | 15.5% | 8,611 | 20,149 | 31,686 |
| **Gross Liquidated Assets** | | $ 1,389,858 | 11.6% | 15.7% | 19.9% | $ 160,754 | $ 218,415 | $ 276,151 |
| **Liquidation Costs** | | | | | | | | |
| Wind Down Costs | [13] | | | | | $ (24,255) | $ (26,809) | $ (29,363) |
| Chapter 7 Trustee Fees | [14] | | | | | (4,524) | (6,253) | (7,986) |
| Chapter 7 Professional and Broker Fees | [15] | | | | | (4,524) | (6,253) | (7,986) |
| **Total Liquidation Costs** | | | | | | $ (33,302) | $ (39,316) | $ (45,334) |
| **Net Distributable Value** | | | | | | $ 127,452 | $ 179,099 | $ 230,817 |

*In USD 000s, unless otherwise noted*
**Claims Recovery Summary:**

|  | Notes | Claim $ | Recovery % Low | Recovery % Mid | Recovery % High | Recovery $ Low | Recovery $ Mid | Recovery $ High |
|---|---|---|---|---|---|---|---|---|
| **Superpriority Claims** | | | | | | | | |
| DIP ABL Facility | | $ 143,289 | 50.2% | 70.6% | 91.0% | $ 71,977 | $ 101,145 | $ 130,352 |
| DIP Term Loan Facility | | 110,436 | 50.2% | 70.6% | 91.0% | 55,474 | 77,954 | 100,465 |
| **Total Superpriority Claims** | [16] | $ 253,724 | 50.2% | 70.6% | 91.0% | $ 127,452 | $ 179,099 | $ 230,817 |
| *Remaining Secured Distributable Value after Superpriority Claims* | | | | | | $ - | $ - | $ - |
| **FILO Claims** | | | | | | | | |
| FILO Term Loan | | $ 238,388 | - | - | - | - | - | - |
| **Total FILO Claims** | [17] | $ 238,388 | - | - | - | - | - | - |
| *Remaining Secured Distributable Value after FILO Claims* | | | | | | $ - | $ - | $ - |
| **First Lien Claims** | | | | | | | | |
| NewCo First Lien Term Loan | | $ 1,014,162 | - | - | - | - | - | - |
| Legacy First Lien Term Loan | | 3,629 | - | - | - | - | - | - |
| Secured Intercompany Loan | | 1,289,441 | - | - | - | - | - | - |
| **Total First Lien Claims** | [18] | $ 2,307,231 | - | - | - | - | - | - |
| *Remaining Secured Distributable Value after First Lien Claims* | | | | | | $ - | $ - | $ - |
| **NewCo Notes Claims** | | | | | | | | |
| NewCo Notes | | $ 275,279 | - | - | - | - | - | - |
| **Total NewCo Notes Claims** | [19] | $ 275,279 | - | - | - | - | - | - |
| *Remaining Secured Distributable Value after NewCo Notes Claims* | | | | | | $ - | $ - | $ - |
| **Total Other Secured Claims** | | $ - | - | - | - | - | - | - |
| **Total Administrative & Other Priority Claim** | [20] | 153,843 | - | - | - | - | - | - |
| *Remaining Secured Distributable Value after Administrative & Other Priority Claims* | | | | | | $ - | $ - | $ - |
| **Legacy Notes Claims** | | | | | | | | |
| Legacy Notes | | $ 110,240 | - | - | - | - | - | - |
| **Total Legacy Notes Claims** | [21] | $ 110,240 | - | - | - | - | - | - |
| **Deficiency Claims** | | | | | | | | |
| Deficiency Claims | | $2,843.8mm - $2,947.2mm | - | - | - | - | - | - |
| **Total Deficiency Claims** | [22] | $2,843.8mm - $2,947.2mm | - | - | - | - | - | - |
| **General Unsecured Claims** | | | | | | | | |
| General Unsecured Claims | | $ 54,231 | - | - | - | - | - | - |
| **Total General Unsecured Claims** | [23] | $ 54,231 | - | - | - | - | - | - |
| **Total Intercompany Claims** | [24] | $ 51,299 | - | - | - | - | - | - |
| *Remaining Unsecured Distributable Value for Intercompany Interests, External Equity Holders and Section 510(b) Claimants* | | | | | | $ - | $ - | $ - |

## Notes to the Liquidation Analysis

*Gross Liquidating Proceeds.* Each liquidating entity will seek to recover the value of its assets consistent with the process described above. The total amount collected at each liquidating entity is based on other assumptions further described below.

1. The Liquidation Analysis assumes the Debtors enter chapter 7 on or about October 31, 2024.

2. The Liquidation Analysis is based on the liquidation of individual legal entity assets. The consolidated waterfall shown in this analysis is a summary based on an aggregation of each Debtor's Claims and recoveries.

3.     The recoverable value for each asset is calculated based on each asset's pro forma asset book value, as of the Conversion Date, adjusted for the corresponding recovery estimate, for which additional commentary is provided below. The aggregation of all calculated recoverable asset value (the "Gross Distributable Value") is then used as the starting point for each Debtor Entity's recovery waterfall.

**Specific Notes to the Liquidation Analysis**

1. Cash

   A. The projected value is based on the appropriate proposed DIP budget as of the Conversion Date. The Debtors estimate to hold approximately $10 million of available Cash.

   B. Consists of Cash held in bank accounts, and excludes amounts carved out to satisfy Professional Fee Claims in accordance with paragraph 11 of the proposed Interim DIP Order.

   C. All projected Cash is assumed to be fully recoverable in all scenarios.

2. Restricted Cash

   A. Restricted Cash is related to Cash reserves set aside for the Debtors' credit card programs.

   B. Restricted Cash is assumed to be held by the contract counterparties and no recovery is assumed.

3. Accounts receivable

   A. Accounts receivable balances are based on the Debtors' estimated balance as of the Conversion Date.

   B. Accounts receivable consist primarily of trade receivables with remaining balances related to bank card and tax refund receivables.

   C. Accounts receivable balances have an estimated recovery rate of 28 – 66%.

4. Inventory

   A. Inventory balances are based on the Debtors' estimated balance as of the Conversion Date.

   B. Inventory balances primarily consist of raw materials, unfinished goods, in-transit goods, and finished goods.

   C. In an orderly liquidation, these items are assumed to be purchased by competitors or customers in a rapid sale, which would allow for a substantial recovery. The

9

       inventory was grouped by brand, and recovery was assumed to be higher for premium brands and lower for standard brands. Inventory situated outside the U.S. is assumed to be non-recoverable, given the risk of Debtors not being able to exercise control.

    D.    Inventory balances have an estimated recovery rate of 38 – 55%.

5.    <u>Prepaid Expenses and Other</u>

    A.    Prepaid expense balances primarily relate to prepaid office expense, lease expense, insurance expense, tax expense, and pre-paid inventory invoices.

    B.    No recoveries are assumed on such prepaid expenses, given the limited ability of the Company to recover funds from counterparties.

6.    <u>Property, Plant & Equipment</u>

    A.    The Debtors' PP&E primarily includes leasehold improvements, furniture and fixtures, office equipment, computer software/hardware, warehouse equipment, and vehicles.

    B.    Leasehold improvements are assumed to have no recovery.

    C.    10 – 30% recovery rate assumed for office furniture, store fixtures, and computer equipment.

    D.    Equipment essential to warehouse operations assumes a recovery rate of 30 – 50%.

    E.    Vehicles are comprised primarily of trucks and corporate vans for both logistics and media purposes. Vehicles are assumed to have a recovery rate of 20-40%.

    F.    PP&E situated outside the U.S. is assumed to be non-recoverable, given the risk of Debtors not being able to exercise control.

    G.    PP&E balances have an aggregate estimated recovery rate of 24 – 43%.

7.    <u>Right of Use Assets</u>

    A.    No recovery assumed because all leases will be rejected during the Debtors' wind-down.

8.    <u>Goodwill and Intangible Assets (excluding IP)</u>

    A.    Intangible Assets comprised primarily of costs related to technology and customer relationships. These assets are assumed to have no recoverable value.

    B.    Goodwill is related to the Company's historical acquisitions at a purchase price value in excess of the acquired company's book value. Goodwill is assumed to have no recoverable value.

9. <u>Deposits and other assets</u>

    A.    Deposits and other assets comprised of utilities, lease, and other deposits or pre-payments.

    B.    No recoveries are assumed, as deposits are primarily related to lease and utilities deposits held by contract counterparties.

10. <u>Intercompany Receivable / Payable</u>

    A.    Intercompany receivable / payable represents net intercompany balances amongst both domestic and foreign entities. These assets have no recoverable value.

11. <u>Investment in Subsidiary</u>

    A.    Investment in subsidiary represents equity ownership of subsidiaries.

    B.    No recoveries are assumed.

12. <u>Intellectual Property</u>

    A.    Represents tradenames and brands of Hoonigan and various subsidiaries.

    B.    4 – 16% blended recoveries estimated for the intellectual property, which assumes (i) value exists across the several hundreds of brands owned by Hoonigan and (ii) indicative bids received during the non-core asset sale process can be achieved during a liquidation.

**Liquidation Costs**

13. <u>Wind-Down Costs</u>

    A.    The Liquidation Period includes personnel expenses for certain of the Company's employees, who will assist the Trustee in winding down the Estates.

    B.    The Liquidation Analysis includes estimated retention bonuses, which are anticipated to be paid to retain critical employees, and severance payments.

    C.    The Liquidation Analysis includes an estimate of non-personnel costs, including rent, utilities, and office expenses to support the wind-down process.

14. <u>Chapter 7 Trustee</u>

    A.  In accordance with section 326 of the Bankruptcy Code, the Liquidation Analysis assumes the Trustee receives 3% of Gross Distributable Value, excluding cash.

15. <u>Chapter 7 Professional Fees</u>

    A.  Professional fees in chapter 7 include costs for professionals engaged by the Trustee after the Conversion Date and may include legal counsel, financial advisors, liquidators, and other professionals.

    B.  All recovery scenarios are estimated based on 2% and 1% for professional fees and broker fees, respectively, of Gross Distributable Value, excluding cash.

**Claims**

*Proceeds to External Creditors*: After the payment of the Wind-Down Expenses, the Debtors and non-Debtors will proceed to distribute any remaining proceeds to external and internal creditors in accordance with their relative payment priorities.

16. <u>Superpriority Claims</u>

    *In USD 000s*

    | Superpriority Claims | |
    |---|---:|
    | DIP ABL Facility | $ 143,289 |
    | DIP Term Loan Facility | 110,436 |
    | **Total Superpriority Claims** | **$ 253,724** |

    A.  Superpriority Claims include any outstanding amounts on the DIP ABL Facility and DIP Term Loan Facility based on estimated amounts on the Conversion Date. The DIP ABL Facility consists of a roll up of the prepetition line of credit provided by the lenders party to the ABL-FILO Credit Agreement. The DIP Term Loan Facility is a new money term loan. The two facilities are *pari passu* in priority.

    B.  Claims for the DIP Term Loan Facility and DIP ABL Facility assume all accrued DIP interest has been paid prior to the Conversion Date.

    C.  The DIP Facilities are expected to have 50 – 91% recovery.

17. FILO Claims

    *In USD 000s*

    | FILO Claims | | |
    |---|---|---:|
    | FILO Term Loan | $ | 238,388 |
    | **Total FILO Claims** | **$** | **238,388** |

    A. The FILO Loans include estimated accrued interest as of the Petition Date and are secured through a second-out position of the first lien on the ABL Priority Collateral and a first lien on the Term Priority Collateral, including a turnover provision in favor of the FILO Loans against the NewCo First Lien Claims.

    B. FILO Loans are expected to have no recovery on account of the Secured portion of the FILO Claim.

18. First Lien Claims

    *In USD 000s*

    | First Lien Claims | | |
    |---|---|---:|
    | NewCo First Lien Term Loan | $ | 1,014,162 |
    | Legacy First Lien Term Loan | | 3,629 |
    | Secured Intercompany Loan | | 1,289,441 |
    | **Total First Lien Claims** | **$** | **2,307,231** |

    A. First Lien Claims include NewCo First Lien Claims, Legacy First Lien Claims, and Claims arising under Intercompany Credit Agreement.

    B. All Claims include estimated accrued interest as of the Petition Date and are secured through a second lien on the ABL Priority Collateral and a first lien on the Term Priority Collateral.

    C. No recovery is assumed for all First Lien Claims.

19. NewCo Notes Claims

    *In USD 000s*

    | NewCo Notes Claims | | |
    |---|---|---:|
    | NewCo Notes Claims | $ | 275,279 |
    | **Total NewCo Notes Claims** | **$** | **275,279** |

    A. Total Junior Funded Debt Claims include the NewCo Notes Claims.

    B. All NewCo Notes Claims include estimated accrued interest as of the Petition Date.

    C. All NewCo Notes Claims are expected to have no recovery value under all scenarios.

20. <u>Administrative & Other Priority Claims</u>

*In USD 000s*

| Administrative and Other Priority Claims | |
|---|---:|
| Priority Tax Claims | $ 26,080 |
| Post-Petition Trade Claims | 127,763 |
| Post-Petition Chapter 11 Professional Fees | - |
| **Total Administrative and Other Priority Claims** | **$ 153,843** |

A. Priority Tax Claims consist of any Claim of a governmental unit of the kind specified in section 507(a)(8) of the Bankruptcy Code as of the Conversion Date. Priority Tax Claims are estimated to be $26 million as of the Conversion Date.

B. Postpetition trade claims are the estimated outstanding costs and expenses incurred on or after the Petition Date through the Conversion Date to preserve the Debtors' Estates and operate the Debtors' businesses. Postpetition trade claims are estimated to be $128 million as of the Conversion Date.

C. All Other Priority Claims are expected to have no recovery value under all scenarios.

21. <u>Legacy Notes Claims</u>

*In USD 000s*

| Legacy Notes Claims | |
|---|---:|
| Legacy Notes | $ 110,240 |
| **Total Legacy Notes Claims** | **$ 110,240** |

A. Total Junior Funded Debt Claims include the Legacy Notes Claims.

B. All Legacy Notes Claims include estimated accrued interest as of the Petition Date.

C. All Legacy Notes Claims are expected to have no recovery value under all scenarios.

22. <u>Deficiency Claims</u>

| Deficiency Claims | |
|---|---:|
| DIP ABL Facility | $12.9mm - $71.3mm |
| DIP Term Loan Facility | $10.0mm - $55.0mm |
| FILO Term Loan | $238.4mm |
| NewCo First Lien Term Loan | $1,014.2mm |
| Legacy First Lien Term Loan | $3.6mm |
| Secured Intercompany Loan | $1,289.4mm |
| NewCo Notes | $275.3mm |
| **Total Deficiency Claims** | **$2.8bn - $2.9bn** |

   A. Total Junior Funded Debt Claims include the Deficiency Claims.

   B. Deficiency Claims are the remaining Secured Claim value, including with respect to the NewCo Notes Claims, that was not paid via the respective collateral. Each deficiency Claim represents a range based on the high and low recovery scenario.

   C. All Deficiency Claims are expected to have no recovery value under all scenarios.

23. <u>General Unsecured Claims</u>

   *In USD 000s*

| General Unsecured Claims | | |
|---|---|---:|
| Pre-Petition Trade Claims | $ | 772 |
| Litigation Claims | | 2,899 |
| Customer Programs Claims | | 26,600 |
| Tax Service Provider Claims | | 370 |
| 502(b)(6) and CCAA Lease Claims | | 23,590 |
| **Total General Unsecured Claims** | **$** | **54,231** |

   A. General Unsecured Claims include, but are not limited to, (i) secured debt deficiency Claims, (ii) prepetition trade Claims, (iii) contract rejection Claims, (iv) deferred revenue, (v) prepetition litigation Claims, (vi) customer program Claims, (vii) tax service provider Claims, and other unsecured Claims.

   B. All General Unsecured Claims are expected to have no recovery value under all scenarios.

24. <u>Intercompany & Equity Claims</u>

   A. Intercompany Claims, Intercompany Interests, and Existing Equity Interests are not anticipated to receive any recovery in a liquidation.