**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>WHEEL PROS, LLC, *et al.*,<br><br>                   Debtors. | Chapter 11<br>Case No. 24-11939 (JTD)<br>(Jointly Administered)<br><br>**Objection Deadline:  October 4, 2024 at 4 p.m.**[1]<br>**Hearing Date: October 8, 2024 at 11 a.m.**<br><br>Re: Docket No. 103 |

**LIMITED OBJECTION TO AND RESERVATION OF RIGHTS FOR MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING (A) THE ASSUMPTION OF AND PERFORMANCE UNDER THE DEFINITIVE AGREEMENTS, (B) THE SALE OF THE 4WP ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS, (C) THE DEBTORS' ASSUMPTION AND ASSIGNMENT OF ALL EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (II) GRANTING RELATED RELIEF**

      GS Portfolio Holdings II, LLC (the "Landlord"), by and through its undersigned counsel, hereby files this limited objection and reservation of rights (this "Objection") to the *Motion of Debtors for Entry of an Order (I) Authorizing and Approving (A) the Assumption of and Performance Under the Definitive Agreements, (B) the Sale of the 4WP Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests, (C) the Debtors' Assumption and Assignment of all Executory Contracts and Unexpired Leases, and (II) Granting Related Relief* (the "Motion")[2] filed by the above-captioned Debtors (collectively, the "Debtors"), and respectfully states as follows:

**PRELIMINARY STATEMENT**

      1.    The Landlord welcomes the new tenant and is not opposed to the assumption and assignment of the Lease (defined below) in connection with the Sale (defined

---

[1]    Extended by agreement of counsel.

[2]    Docket No. 103.  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

below) contemplated by the Motion, but files this Objection solely out of an abundance of caution to raise certain issues related to the proposed assignment that remain unresolved as of the date hereof.

2.      First, in connection with the potential assumption of the Lease, the Debtors are required to satisfy the cure amount set in **Exhibit A**, plus any additional pecuniary losses suffered by the Landlord, including reasonable attorneys' fees.  The Debtors must also cure or provide adequate assurance that they will cure all non-monetary defaults under the Lease.

3.      Second, to satisfy the Debtors' burden under section 365 of the Bankruptcy Code, the Debtors must furnish the Landlord with sufficient adequate assurance information to determine if any proposed assignee is creditworthy and could be a viable operator of the business, specifically in the context of heightened requirements afforded to counterparties to shopping center leases under section 365(b)(3) of the Bankruptcy Code.  Moreover, as part of adequate assurance of future performance, the Debtors must also: (i) satisfy all Adjustment Amounts (as defined below); (ii) be required to comply with all contractual obligations to indemnify and hold the Landlord harmless with regard to events which occurred before assumption and assignment, but which were not known to the Landlord as of the date of the assumption and assignment; and (iii) continue to timely pay all rent, additional rent, and percentage rent due under the Lease until the Lease is assumed and assigned pursuant to section 365(d)(3) of the Bankruptcy Code.

4.      The Landlord is confident that most, if not all, of the issues raised herein will be consensually resolved with the Debtors, but files this Objection solely out of an abundance of caution to reserve its right to argue these issues at the hearing, if necessary.

## BACKGROUND

### A.    General Background

5.    The Landlord is the owner or managing agent for the owner of certain shopping centers located throughout the United States.  The Debtors lease retail space from the Landlord pursuant to a written lease (the "Lease") for certain retail space located at 2605-B Preston Road, Frisco, TX 75034, which is commonly referred to as the Stonebriar Mall (the "Leased Premises").  The Leased Premises is located in a "shopping center" as that term is used in section 365(b)(3) of the Bankruptcy Code.[3]

6.    On September 8, 2024 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with this Court.  Since the Petition Date, the Debtors have continued to manage their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

### B.    The Sale and Proposed Lease Assignment

7.    On September 16, 2024, the Debtors filed the Motion, which requests that this Court approve, among other things:  (i) the sale of the Debtors' 42 retail locations and related e-commerce and intellectual property assets (the "Sale") to ORW USA, Inc. ("ORW"); and (ii) the assumption and assignment of certain executory contracts and unexpired leases identified on Exhibit 3 to the Proposed Sale Order, including the Lease (the "Proposed Assignment").

## OBJECTION

### I.    The Debtors Must Pay The Requisite Cure Amount Before The Proposed Assignment Can Be Approved

8.    Section 365(b)(1)(A) of the Bankruptcy Code provides that, unless a lessee-debtor either (a) cures all existing defaults or (b) provides the lessor with adequate assurance that

---

[3]    *See, e.g.*, *In re Joshua Slocum, Ltd.*, 922 F.2d 1081 (3d Cir. 1990).

it will promptly cure those defaults, it cannot assume the lease.[4]  As one court has noted, "[s]ection 365(b)(1) is intended to provide protection to the non-debtor lessor to insure that he receives the full benefit of his bargain in the event of assumption."[5]

9.      Pursuant to the Lease, the Debtors are obligated to pay regular installments of fixed monthly rent, percentage rent, and/or gross rent, as well as a share of common area maintenance ("CAM") costs and expenses, real estate taxes, and assessments.  In addition, for the Proposed Assignment to be approved, all outstanding defaults under the Lease must be cured, and the Landlord must be compensated for any actual pecuniary loss, including the payment of related attorneys' fees.[6]  Attorneys' fees due under the Lease are compensable.[7]

10.     The cure amount for the Lease is set forth on **Exhibit A**, attached hereto, in the "Cure Amount" column, which includes an estimate of attorneys' fees incurred to date (the "Cure Amount").  To the extent that rent, attorneys' fees, interest, and/or other charges continue to accrue, and/or the Landlord suffers other pecuniary losses with respect to the Lease, the Landlord hereby reserves its right to amend the Cure Amount to reflect such additional amounts or to account for year-end adjustments, including, without limitation, adjustments for 2023 and 2024, which have not yet been billed or have not yet become due under the terms of the Lease (the "Adjustment Amounts").  The Debtors must be responsible to satisfy all accrued but unbilled obligations under the Lease, including the Adjustment Amounts, if any, when due in accordance

---

[4]      *See* 11 U.S.C. § 365(b)(1)(A).

[5]      *In re Bon Ton Rest. & Pastry Shop, Inc.*, 53 B.R. 789, 793 (Bankr. N.D. Ill. 1985); *accord In re Valley View Shopping Ctr., L.P.*, 260 B.R. 10, 25 (Bankr. D. Kan. 2001).

[6]      *See* 11 U.S.C. § 365(b)(1)(B).

[7]      *See LJC Corp. v. Boyle*, 768 F.2d 1489, 1494–96 (D.C. Cir. 1985); *see also In re Bullock*, 17 B.R. 438, 439 (B.A.P. 9th Cir. 1982); *In re Crown Books Corp.*, 269 B.R. 12, 14–15 (Bankr. D. Del. 2001); *In re BAB Enters., Inc.*, 100 B.R. 982, 984 (Bankr. W.D. Tenn. 1989); *In re Westview 74th St. Drug Corp.*, 59 B.R. 747, 757 (Bankr. S.D.N.Y. 1986); *In re Ribs of Greenwich Vill., Inc.*, 57 B.R. 319, 322 (Bankr. S.D.N.Y. 1986).

with the terms of the Lease, regardless of when such Adjustment Amounts were incurred.  The

Landlord further reserves its right to amend the Cure Amount to include additional amounts that

continue to accrue, including non-monetary obligations, and any other obligations that arise and/or

become known to the Landlord prior to the assumption and assignment of the Lease.

**II.**      **The Debtors And/Or The Proposed Assignee Must Provide Adequate Assurance Of Future Performance Under The Lease**

11.      In addition to the curing of any default, the Proposed Assignment is also

conditioned upon providing the Landlord with adequate assurance of future performance.[8]  Section

365(f)(2)(B) of the Bankruptcy Code provides that a trustee or debtor-in-possession may assign an

unexpired nonresidential lease only if "adequate assurance of future performance by the assignee

of such contract or lease is provided, whether or not there has been a default in such contract or

lease."[9]

12.      It is well established that "[t]he Bankruptcy Code imposes heightened

restrictions on the assumption and assignment of leases of shopping centers."[10]  Accordingly,

section 365(b)(3) of the Bankruptcy Code provides, in pertinent part:

> [A]dequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance —
>
> > (a)      of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease;
> >
> > (b)      that any percentage rent due under such lease will not decline substantially;

---

[8]      11 U.S.C. § 365(b)(1)(C).

[9]      11 U.S.C. § 365(f)(2)(B).

[10]      *In re Joshua Slocum, Ltd.*, 922 F.2d at 1086.

(c)     that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and

(d)     that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.[11]

**A.      *The Landlord Is Entitled To Additional Information To Evaluate The Assignee's Ability To Perform Under The Lease***

13.     Adequate assurance requires a foundation that is nonspeculative and sufficiently substantive to assure that a landlord will receive the bargained-for performance.[12] Indeed, courts have required a specific factual showing through competent evidence to determine whether adequate assurance of future performance has been provided.[13]

14.     To determine whether the requirements of adequate assurance of future performance will be satisfied, the Landlord its attorneys must receive, at a minimum, the following information from the proposed assignee of the Lease (collectively, the "Adequate Assurance Information"):

(a)     The exact name of the entity that will be designated as the assignee of the Lease and any guarantor, along with a description of the management of the proposed assignee;

(b)     Audited (or un-audited, if audited is not available) financial statements and any supplemental schedules for the calendar or fiscal years ended 2022, 2023, and 2024 for the proposed assignee and any guarantors;

(c)     Any and all documents regarding the assignee's and any guarantor's experience operating stores in shopping centers;

---

[11]     11 U.S.C. § 365(b)(3).

[12]     *In re World Skating Ctr., Inc.*, 100 B.R. 147, 148–149 (Bankr. D. Conn. 1989).

[13]     *See, e.g.*, *Matter of Haute Cuisine, Inc.*, 58 B.R. 390, 393–394 (Bankr. M.D. Fla. 1986); *see also Matter of CM Sys., Inc.*, 64 B.R. 363, 364–65 (Bankr. M.D. Fla. 1986).

     (d)     The number of stores the proposed assignee and any guarantor operates and all trade names used;

     (e)     The proposed assignee and any guarantor's 2024 and 2025 business plans including sales and cash flow projections;

     (f)     A statement setting forth the proposed assignee's intended use of the premises; and

     (g)     Any financial projections, calculations, and/or financial *pro-formas* prepared in contemplation of purchasing the Lease.

15.     The Landlord may also need similar information for the Debtors in the years when the Debtors entered into the Lease to appropriately evaluate the ability of the proposed assignee to provide adequate assurance of future performance.

16.     Unless and until the Landlord receives all of the Adequate Assurance Information, the Debtors have not satisfied their burden pursuant to 11 U.S.C. § 365(b)(3).

### B.     *The Lease Must Be Assumed and Assigned Cum Onere*

17.     Section 365(b)(3)(C) of the Bankruptcy Code provides that the assumption of a shopping center lease "is subject to all the provisions thereof…."[14]  Bankruptcy courts have described the assumption of an unexpired lease as "an all-or-nothing proposition – either the whole contract [or lease] is assumed or the entire contract [or lease] is rejected."[15]

18.     As the court noted in *In re Washington Capital Aviation & Leasing*:

Adequate assurance of future performance by the assignee is important because 11 U.S.C. § 365(k) "relieves the ... estate from any liability for any breach of such ... lease occurring after such assignment."  A party subject to a contractually created obligation ordinarily cannot divest itself of liability by substituting another in its place without the consent of the party owed the duty . . . While the assignee may be entitled to perform for the original obligor, the original obligor remains ultimately liable until discharged by performance or otherwise.  Section 365(k) changes this

---

[14]     11 U.S.C. § 365(b)(3)(C).

[15]     *See, e.g.*, *In re CellNet Data Sys., Inc.*, 327 F.3d 242, 249 (3d Cir. 2003).

common law rule and relieves the estate from all liability under the lease following assignment.[16]

19.     The Third Circuit has stated that adequate assurance is "necessary to protect the rights of the non-debtor party to the contract or lease, because assignment relieves the trustee and the estate from liability arising from a post-assignment breach".[17]  The Debtors are not entitled to the benefits and protections of section 365(k) if they do not assume and assign a lease *cum onere* — with all benefits and burdens.[18]

20.     Furthermore, the Debtors or the proposed assignee must be required to comply with all contractual obligations to indemnify and hold the Landlord harmless for events which occurred before assumption and assignment, but which were not known to the Landlord as of the date of the assumption and assignment.  This includes, but is not limited to, (i) claims for personal injury that occurred at the Leased Premises, (ii) damage and destruction to the Leased Premises or property by the Debtors or their agents, and (iii) environmental damage or clean-up.  To cure possible pre-assignment, non-monetary defaults and provide adequate assurance of future performance with respect to the indemnification obligations under the Lease, either (a) the Debtors or the proposed assignee must be required to satisfy any and all such claims, notwithstanding anything to the contrary contained in a plan or any court order, or (b) the Debtors must be required to demonstrate or obtain adequate insurance (by purchase of "tail" coverage or otherwise) in order to satisfy potential indemnification obligations based on events or occurrences that occurred prior to the effective date of assignment.  Such claims for indemnity could include claims for personal

---

[16]     156 B.R. at 167, 175 n. 3 (Bankr. E.D. Va. 1993) (internal citations omitted).

[17]     *In re Rickel Home Ctrs.*, Inc., 209 F.3d 291, 299 (3d Cir. 2000).

[18]     *See, e.g.*, *Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76 (3d Cir. 1999).

injury occurring at the Leased Premises where the Landlord is joined as a party to a lawsuit or for damage and destruction of property by the Debtors or their agents or employees.

21.     Finally, the Landlord asserts that the proposed assignee should be required to execute a short-form assumption and assignment agreement with the Landlord so that the Landlord will be in privity with its new tenant.

### III.     Demand For Security

22.     Section 365(l) of the Bankruptcy Code provides, in pertinent part:

> If an unexpired lease under which the debtor is lessee is assigned pursuant to this section, the lessor of the property may require a deposit or other security for the performance of the debtor's obligations under the lease substantially the same as would have been required by the landlord upon the initial leasing to a similar tenant.[19]

23.     In the ordinary course of business, the Landlord requires security deposits, letters of credit, or guaranties when leasing (or assessing an assignment of a lease) to certain companies based on their financial information and history.  In connection with the proposed assumption and assignment of the Lease, the Landlord hereby demands such security in one of those forms as required by section 365(l) of the Bankruptcy Code.  Until the exact financials of the proposed assignee are known to the Landlord, the Landlord reserves its right to specify the exact form and amount of such security; however, the Landlord would typically require a parent or personal guaranty in connection with leasing to a new tenant.

### RESERVATION OF RIGHTS

24.     The Landlord reserves the right to make such other and further objections as may be appropriate based upon any new information provided by the Debtors or the proposed assignee, or as may be developed through formal or informal discovery, with the respect to the

---

[19]     11 U.S.C. § 365(l).

relief requested in the Motion or upon any different relief requested by the Debtors.  The Landlord further reserves the right to amend and/or supplement this Objection on any basis, including, without limitation, by amending the Landlord Cure Amount and by adding or supplementing objections to the Proposed Assignment or adequate assurance of future performance information provided by the Debtors.

## <u>CONCLUSION</u>

**WHEREFORE**, the Landlord respectfully requests that any order approving the assignment of the Lease be conditioned upon: (i) the Debtors and/or the proposed assignee satisfying the Landlord's cure amount, set forth on **<u>Exhibit A</u>** hereto; (ii) the Debtors and/or the proposed assignee providing the requisite adequate assurance of future performance under the Lease; and (iii) the Proposed Assignee providing the Landlord with security, as required under section 365(l) of the Bankruptcy Code.

Dated:  October 4, 2024                     Respectfully submitted,

**LAW OFFICE OF SUSAN E. KAUFMAN, LLC**

*/s/ Susan E. Kaufman*
Susan E. Kaufman, (DSB No. 3381)
919 North Market Street, Suite 460
Wilmington, DE 19801
Telephone: (302) 472-7420
Fax: (302) 792-7420
Email: skaufman@skaufmanlaw.com

-and-

**KELLEY DRYE & WARREN LLP**
Robert L. LeHane
Jennifer D. Raviele
Steven Yachik
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Telephone: (212) 808-7800
Email: rlehane@kelleydrye.com
        jraviele@kelleydrye.com
        syachik@kelleydrye.com

*Counsel to GS Portfolio Holdings II, LLC*

## <u>EXHIBIT A</u>

**Leased Premises and Cure Amount**

**GS Portfolio Holdings II, LLC**

| Premises Address | Landlord Cure Amount |
|---|---|
| 2605-B Preston Rd.<br>Frisco, TX 75034 | $27,641.32 |