**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| WHEEL PROS, LLC, *et al.*,[1] | ) | Case No. 24-11939 (JTD) |
| Debtors. | ) | (Jointly Administered) |
| | ) | **Re: Docket Nos. 5, 8, 12, 87, 148, 214, 234** |

**FINDINGS OF FACT,**
**CONCLUSIONS OF LAW, AND ORDER**
**(I) APPROVING THE DISCLOSURE STATEMENT FOR,**
**AND CONFIRMING, THE AMENDED JOINT PREPACKAGED**
**PLAN OF REORGANIZATION OF WHEEL PROS, LLC AND**
**ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF**
**THE BANKRUPTCY CODE, AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), having, in each case in accordance with chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), and the Local Rules of Bankruptcy Practice and Procedure of the United States District Court for the District of Delaware (the "Local Rules"):

a. entered into that certain Restructuring Support Agreement, by and among the Debtors and the Consenting Stakeholders,[2] dated as of September 8, 2024 [Docket No. 6, Exhibit A] (as amended by that certain First Amendment to Restructuring Support Agreement, dated as of September 23, 2024, and as may be amended, amended and restated, supplemented, or otherwise modified from time to time in accordance with its terms, the "RSA");

[1] The last four digits of Debtor Wheel Pros, LLC's federal tax identification number are 5738. A complete list of each of the Debtors in these chapter 11 cases and each such Debtor's federal tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/WheelPros. The location of Debtor Wheel Pros, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 5347 S Valentia Way, Suite 200, Greenwood Village, Colorado 80111.

[2] Capitalized terms used but not defined in this order (this "Confirmation Order") have the meanings ascribed to them in the Plan (as defined herein). The rules of interpretation set forth in Article I.B of the Plan shall apply.

b. distributed, on or about September 8, 2024 (the "Solicitation Commencement Date"), (i) the *Joint Prepackaged Plan of Reorganization of Wheel Pros, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 5] (as may be amended, supplemented, or otherwise modified from time to time, including by the Amended Plan (as defined below), the "Plan"), (ii) the *Disclosure Statement Relating to the Joint Prepackaged Plan of Reorganization of Wheel Pros, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 8] (as may be amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement"), (iii) the Debtors' solicitation cover letter, attached as Exhibit 3 to the Scheduling Order[3] (the "Solicitation Cover Letter"), (iv) the ballots for voting on the Plan (the "Ballots"), which forms of Ballots were attached as Exhibit 4, Exhibit 5A, and Exhibit 5B to the Scheduling Order, to Holders of Claims entitled to vote on the Plan; namely, Holders of Claims in Class 5 (the "First Lien Claims") and Class 6 (the "Junior Funded Debt Claims"), (v) with respect to Holders of Claims in Class 5, the election form, attached as Exhibit 6 to the Scheduling Order (the "Election Form"), and (vi) with respect to Holders of Claims in Class 5, the registration form regarding the receipt of New Equity Interests, attached as Exhibit 1 to the Class 5 Ballot (the "Registration Form," and together with the Plan, the Disclosure Statement, the Solicitation Cover Letter, each applicable Ballot, and the Election Form, a "Solicitation Package");

c. solicited, beginning on the Solicitation Commencement Date and continuing through October 10, 2024, at 4:00 p.m. (prevailing Eastern Time) (the "Voting Deadline"), votes on the Plan from Holders of Claims in Class 5 and Class 6 (collectively, the "Voting Classes");

d. following the commencement of solicitation as described above, commenced, on September 8, 2024 (the "Petition Date"), the Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code;

e. posted, on September 8, 2024, the contents of the Solicitation Packages and the First Day Pleadings on the Solicitation Agent's public website;

f. Filed, on the Petition Date, (i) the Plan; (ii) the Disclosure Statement; (iii) the *Declaration of Vance Johnston, Chief Executive Officer of Wheel Pros, LLC, in Support of Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 6], detailing the facts and circumstances of the Chapter 11 Cases; (iv) the First Day Pleadings; and (v) the *Motion of Debtors for Entry of an Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Approving Related Dates, Deadlines, Notices, and Procedures, (III) Approving*

---

[3] *Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Approving Related Dates, Deadlines, Notices, and Procedures, (III) Approving the Solicitation Procedures and Related Dates, Deadlines, and Notices, (IV) Conditionally Waiving the Requirement that (A) The U. S. Trustee Convene a Meeting of Creditors and (B) The Debtors File Schedules of Assets and Liabilities, Statements of Financial Affairs, and Rule 2015.3 Financial Reports, and (V) Granting Related Relief* [Docket No. 87] (the "Scheduling Order").

*the Solicitation Procedures and Related Dates, Deadlines, and Notices, (IV) Conditionally Waiving the Requirement that (A) The U. S. Trustee Convene a Meeting of Creditors and (B) The Debtors File Schedules of Assets and Liabilities, Statements of Financial Affairs, and Rule 2015.3 Financial Reports, and (V) Granting Related Relief* [Docket No. 12] (the "Scheduling Motion");

g. Filed, on September 9, 2024, a certificate of service [Docket No. 55] evidencing service of the Solicitation Packages (the "Solicitation Affidavit");

h. distributed, on or about September 10, 2024, the *Notice of (I) Commencement of Prepackaged Chapter 11 Bankruptcy Cases, (II) Combined Hearing on the Disclosure Statement, Confirmation of the Joint Prepackaged Chapter 11 Plan, and Related Matters, and (III) Related Objection and Briefing Deadlines*, substantially in the form attached as Exhibit 1 to the Scheduling Order (the "Confirmation Hearing Notice") and, as applicable, the *Notice of Non-Voting Status to Holders or Potential Holders of Unimpaired Claims Conclusively Presumed to Accept the Plan* and *Notice of Non-Voting Status to Holders or Potential Holders of Impaired Claims and/or Existing Equity Interests Conclusively Deemed to Reject the Plan*, substantially in the forms respectively attached to the Scheduling Order as Exhibit 7A and Exhibit 7B (each, a "Notice of Non-Voting Status and Opt-Out Form," and collectively, the "Notices of Non-Voting Status and Opt-Out Form") to parties in interest and Holders of Claims and Interests consistent with the Scheduling Order;

i. Filed, on September 13, 2024, a certificate of service [Docket No. 100] evidencing the service of the Notices of Non-Voting Status and Opt-Out Form (the "Opt-Out Affidavit") and a certificate of service [Docket No. 57] evidencing service of the First Day Pleadings (the "First Day Pleadings Affidavit");

j. published, on September 13, 2024, in *The New York Times* (national edition) and on September 17, 2024, in *The New York Times* (international edition), the publication notice of commencement of these Chapter 11 Cases and the Confirmation Hearing, substantially in the form attached as Exhibit 2 to the Scheduling Order (collectively, the "Publication Notice"), as evidenced by the proofs of publication thereof [Docket Nos. 99 and 121, respectively] (the "Publication Affidavits" and, together, with the Solicitation Affidavit, the First Day Pleadings Affidavit, the Opt-Out Affidavit, and all other affidavits of service and publication in these Chapter 11 Cases, the "Affidavits");

k. Filed, on October 3, 2024, the *Notice of Filing of Plan Supplement* [Docket No. 148] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan Supplement");

l. Filed, on October 13, 2024, the *Amended Joint Prepackaged Plan of Reorganization of Wheel Pros, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 214] (the "Amended Plan");

m. obtained approval of the Plan by each Voting Class as of the Voting Deadline, as evidenced by *Declaration of Alexa Westmoreland Regarding the Solicitation and Tabulation of Votes on the Amended Joint Prepackaged Plan of Reorganization of Wheel Pros, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 216] (the "Voting Report");

n. Filed, on October 13, 2024, (i) the *Declaration of Vance Johnston, Chief Executive Officer of Wheel Pros, LLC, in Support of the Debtors' Disclosure Statement for, and Confirmation of, the Amended Joint Prepackaged Plan of Reorganization of Wheel Pros, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 218] (the "Johnston Declaration"), (ii) the *Declaration of Cari Turner, Managing Director of Alvarez & Marsal North America, LLC, in Support of the Debtors' Disclosure Statement for, and Confirmation of, the Amended Joint Prepackaged Plan of Reorganization of Wheel Pros, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 217] (the "Turner Declaration"), and (iii) the *Declaration of Matthew Braun, Managing Director of Houlihan Lokey Capital, Inc., in Support of the Debtors' Disclosure Statement for, and Confirmation of, the Amended Joint Prepackaged Plan of Reorganization of Wheel Pros, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 219] (the "Braun Declaration");

o. Filed, on October 14, 2024, (i) the *Debtors' Memorandum of Law in Support of an Order Approving the Debtors' Disclosure Statement for, and Confirming, the Amended Joint Prepackaged Chapter 11 Plan of Reorganization of Wheel Pros, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 226] (the "Confirmation Brief"), and (ii) the *Declaration of Jonathan F. Foster in Support of Confirmation of the Amended Joint Prepackaged Plan of Reorganization of Wheel Pros, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 224] (the "Foster Declaration" and together with the Voting Report, the Johnston Declaration, the Turner Declaration, and the Foster Declaration, the "Declarations");

p. Filed, on October 14, 2024, the amended Plan Supplement [Docket No. 234]; and

q. operated their businesses and managed their properties during the Chapter 11 Cases as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

The Bankruptcy Court, having:

a. reviewed the procedures for voting on the Plan (the "Solicitation Procedures") and for opting out of the Third-Party Release (the "Opt-Out Procedures");

b. entered, on September 10, 2024, the Scheduling Order, which, among other things, set (i) October 10, 2024, at 4:00 p.m. (prevailing Eastern Time) as the Voting Deadline, the deadline for objections to the adequacy of the Disclosure Statement

and Confirmation of the Plan, and the deadline to opt out of the Plan releases in accordance with the Opt-Out Procedures; and (ii) October 15, 2024, at 10:00 a.m. (prevailing Eastern Time) as the date and time for the Confirmation Hearing;

c. reviewed the Plan, the Disclosure Statement, the Confirmation Brief, the Voting Report, the Johnston Declaration, the Turner Declaration, the Foster Declaration, the Braun Declaration, the Affidavits, the Confirmation Hearing Notice, the Solicitation Cover Letter, the Ballots, the Election Form, the Registration Form, the Publication Notice, the Notices of Non-Voting Status and Opt-Out Form, and all other Filed pleadings, exhibits, statements, declarations, and comments regarding approval of the Disclosure Statement and Confirmation of the Plan, including all objections, statements, and reservations of rights;

d. reviewed the discharge, compromises, settlements, releases, exculpations, and injunctions set forth in Article VIII of the Plan;

e. considered the Restructuring Transactions incorporated and described in the Plan, including in the Plan Supplement;

f. held the Confirmation Hearing on October 15, 2024, at 10:00 a.m. (prevailing Eastern Time);

g. heard and considered the statements and arguments made by counsel in respect of approval of the Disclosure Statement and Confirmation of the Plan, including any objections thereto;

h. overruled any and all objections to Confirmation of the Plan and to approval of the Disclosure Statement, and any and all statements and reservations of rights related thereto not consensually resolved or withdrawn;

i. considered all oral representations, affidavits, testimony, documents, Filings, and other evidence regarding approval of the Disclosure Statement and Confirmation of the Plan, including any objections thereto; and

j. taken judicial notice of all pleadings and other documents Filed, all orders entered, and all evidence and arguments presented in these Chapter 11 Cases.

**NOW, THEREFORE**, it appearing to the Bankruptcy Court that notice of the Confirmation Hearing and the opportunity for any party in interest to object to approval of the Disclosure Statement and Confirmation of the Plan have been adequate and appropriate as to all Entities affected or to be affected by the Plan and the transactions contemplated thereby, and that the legal and factual bases set forth in the documents Filed in support of approval of the Disclosure Statement and Confirmation of the Plan and the arguments and evidence presented at

the Confirmation Hearing establish just cause for the relief granted herein, and after due deliberation thereon and good cause appearing therefor, the Bankruptcy Court hereby makes and issues the following findings of fact, conclusions of law, and orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**IT IS DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:**

### I. Findings and Conclusions.

1. The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law under rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

### II. Jurisdiction and Venue, Eligibility for Relief, Burden of Proof, and Notice.

2. The Bankruptcy Court has jurisdiction over these Chapter 11 Cases pursuant to sections 157 and 1334 of title 28 of the United States Code, 28 U.S.C. §§ 1–4881 (the "Judicial Code"), which was referred to the Bankruptcy Court under 28 U.S.C. § 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. The Bankruptcy Court has jurisdiction to determine whether the Disclosure Statement and the Plan comply with the applicable provisions of the Bankruptcy Code and should be approved and confirmed, respectively. Venue is proper in this district pursuant to sections 1408 and 1409 of the Judicial Code. Approval of the Disclosure Statement and Confirmation of the Plan are core proceedings within the meaning of section 157(b)(2) of the Judicial Code. Each of the Debtors was and is an entity eligible for relief under section 109 of the Bankruptcy Code.

**III. Commencement and Joint Administration of these Chapter 11 Cases.**

3. On the Petition Date, the Debtors commenced these Chapter 11 Cases by each filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On September 10, 2024, the Bankruptcy Court entered an order [Docket No. 83] pursuant to which the Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). Since the Petition Date, the Debtors have operated their business and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee has been appointed in these Chapter 11 Cases.

**IV. Objections Overruled.**

4. The Bankruptcy Court takes judicial notice of the docket of these Chapter 11 Cases. Any resolution or disposition of objections to approval of the Disclosure Statement or Confirmation of the Plan explained on the record at the Confirmation Hearing is hereby incorporated by reference. All unresolved objections, statements, informal objections, and reservations of rights (except with respect to unresolved Cure disputes, if any, which shall be resolved in accordance with Article V of the Plan), if any, related to approval of the Disclosure Statement or Confirmation of the Plan are overruled on the merits.

**V. Burden of Proof – Confirmation of the Plan.**

5. The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation of the Plan. In addition, and to the extent applicable, the Plan is confirmable under the clear and convincing evidentiary standard. Each witness who testified on behalf of the Debtors in connection with

Confirmation, including those who testified via the Declarations, was credible, reliable, and qualified to testify as to the topics addressed in his or her testimony.

**VI. <u>Approval of the Disclosure Statement</u>.**

6. The Disclosure Statement contains (a) sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable nonbankruptcy laws, rules, and regulations, including, to the extent applicable, the Securities Act and (b) "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code and used in section 1126(b)(2) of the Bankruptcy Code), and is approved in all respects. The Debtors' use of the Disclosure Statement in solicitation of acceptances of the Plan is approved. The Filing of the Disclosure Statement satisfied Bankruptcy Rule 3016(b).

**VII. <u>Solicitation and Voting; Notice</u>.**

7. The Solicitation Procedures, including all documents related thereto (including, for the avoidance of doubt, the Solicitation Cover Letter, the Confirmation Hearing Notice, the Publication Notice, the Ballots, the Registration Form, the Election Form, and the Notices of Non-Voting Status and Opt-Out Form), and the procedures for the tabulation of Ballots, satisfy the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable laws, rules, and regulations, and are approved in all respects. The Debtors provided due, adequate, and sufficient notice of the Voting Deadline, the Objection Deadline, the deadlines to opt-out of, or otherwise object to, the Third-Party Release, and the Confirmation Hearing in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable rules, laws, and regulations. No other or further notice is or shall be required.

8. As described in the Voting Report and the Affidavits, the Debtors transmitted the Solicitation Package, the Confirmation Hearing Notice, and the Notices of Non-Voting Status and Opt-Out Form, as applicable, to all Holders of Claims and Interests (except for Class 8

(Intercompany Claims) and Class 9 (Intercompany Interests)) as of the Voting Record Date and all other parties in interest on or after the Petition Date. Specifically, as described in the Voting Report and Affidavits, (a) prior to commencing these Chapter 11 Cases, the Debtors transmitted the Solicitation Package to all Holders of Claims in the Voting Classes, and (b) subsequent to the Petition Date, served (i) the Confirmation Hearing Notice on all parties in interest, and (ii) the Notices of Non-Voting Status and Opt-Out Form to Holders of Claims that are Unimpaired under the Plan and who are conclusively presumed to accept the Plan (Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), Class 3 (ABL Claims), Class 4 (FILO Claims), and Class 7 (General Unsecured Claims) and Holders of Claims and Interests that are Impaired under the Plan and who are conclusively deemed to reject the Plan (Class 10 (Existing Equity Interests) and Class 11 (Section 510(b) Claims)). Transmission and service of the foregoing, and any and all other documents associated with the Debtors' solicitation, complied with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable nonbankruptcy law, rule, or regulation, and were timely, adequate, and sufficient, and no other or further notice is or shall be required.

9. Under the circumstances of these Chapter 11 Cases, the period during which the Debtors solicited acceptances or rejections of the Plan was a reasonable and sufficient period of time for Holders of Claims in the Voting Classes to make an informed decision to accept or reject the Plan. The execution, delivery, and performance of the RSA and the solicitation of votes to accept or reject the Plan was conducted in good faith and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable nonbankruptcy law, rule, or regulation. The Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, managers, employees, advisors, and attorneys are hereby granted the protections provided under section 1125(e) of the Bankruptcy Code.

10. Holders of Claims in Class 5 (First Lien Claims) and Class 6 (Junior Funded Debt Claims) were eligible to vote on the Plan in accordance with the Solicitation Procedures. The Ballots used to solicit votes to accept or reject the Plan from Holders in the Voting Classes were appropriate and adequately addressed the particular needs of these Chapter 11 Cases. As evidenced by the Voting Report, Class 5 and Class 6 each voted to accept the Plan at each Debtor entity in accordance with section 1126 of the Bankruptcy Code.

11. With respect to each applicable Debtor, Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), Class 3 (ABL Claims), Class 4 (FILO Claims), and Class 7 (General Unsecured Claims) are Unimpaired and conclusively presumed to accept the Plan; Class 10 (Existing Equity Interests) and Class 11 (Section 510(b) Claims) are Impaired and deemed to reject the Plan (collectively, the "Deemed Rejecting Classes"); and, depending on their ultimate treatment by the Debtors, Holders of Claims and Interests in Class 8 (Intercompany Claims) and Class 9 (Intercompany Interests) are either Unimpaired or Impaired and will be either conclusively deemed to accept or conclusively deemed to reject the Plan, and in either scenario are not entitled to vote on the Plan (the foregoing Classes, collectively, the "Non-Voting Classes"). The Debtors were not required to solicit votes from Holders of Claims or Interests, as applicable, in the Non-Voting Classes.

12. The solicitation of votes on the Plan complied with the Bankruptcy Code, Bankruptcy Rules, Local Rules, and all applicable non-bankruptcy rules, laws, and regulations, and was appropriate and satisfactory and is approved in all respects.

**VIII. Opt-Out Procedures.**

13. The Opt-Out Procedures set forth in the Ballots and service of the Confirmation Hearing Notice, the Publication Notice, and the Notices of Non-Voting Status and Opt-Out Form, as applicable, are good, sufficient, and adequate to bind the applicable parties, including all known

stakeholders, to the Third-Party Release and are approved in all respects. The process described in the Scheduling Motion (as authorized by the Scheduling Order) and the Voting Report that the Debtors and the Solicitation Agent followed to identify the relevant parties on which to serve the applicable Ballot or Notice of Non-Voting Status and Opt-Out Form (a) is consistent with practices used in other complex chapter 11 cases, and (b) was reasonably calculated to ensure that each Holder of Claims and Interests in each Class was informed of its ability to opt out of the Third-Party Release and the consequences for failure to do so timely. Any party that elected in its Ballot of the Opt-Out Form, as applicable, to opt out of the Third-Party Release and timely submitted such election to the Solicitation Agent in accordance with the Solicitation Procedures prior to any deadline to submit such Ballot or Opt-Out Form, as applicable, whether under any original or extended deadline, shall be neither a Released Party nor a Releasing Party under the Plan.

14. The procedures used for tabulation of elections to opt out of the Third-Party Release are approved in all respects.

**IX. Plan Supplement.**

15. The Plan Supplement complies with the Bankruptcy Code and the terms of the Plan, and the filing and notice of such documents were good, proper, and in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable laws, rules, and regulations, and no other or further notice is or shall be required with respect to the Plan Supplement and all of the documents included therein.

16. All documents included in the Plan Supplement, including any amendments, modifications, and supplements thereto, and all documents and agreements related thereto (including all exhibits and attachments thereto), are integral to, part of, and incorporated by reference in, the Plan and this Confirmation Order. Subject to the terms of the Plan, the RSA

(including any consent rights set forth or incorporated therein), and this Confirmation Order, the Debtors' right to alter, amend, update, or modify the Plan Supplement on or before the Effective Date is reserved. All parties were provided due, adequate, and sufficient notice of the Plan Supplement.

**X. <u>Modifications to Plan</u>.**

17. Pursuant to section 1127 of the Bankruptcy Code, any modifications to the Plan after solicitation of the Plan, as reflected in this Confirmation Order (including any modifications announced on the record of the Confirmation Hearing), constitute technical or clarifying changes, changes with respect to particular Claims by agreement with Holders of such Claims or their authorized representatives, or modifications that do not otherwise materially and adversely affect or change the treatment of any other Claim under the Plan. After giving effect to these modifications, if any, the Plan continues to satisfy the requirements of sections 1122 and 1123 of the Bankruptcy Code, and notice of these modifications was adequate and appropriate under the facts and circumstances of these Chapter 11 Cases. In accordance with Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code, and they do not require that Holders of Claims be afforded an opportunity to cast new votes on the Plan or change previously cast acceptances or rejections of the Plan. Accordingly, the Plan is properly before the Bankruptcy Court and all votes cast with respect to the Plan prior to such modification shall be binding and shall apply with respect to the Plan. All Holders of Claims who voted to accept the Plan or who are conclusively presumed to accept the Plan are deemed to have accepted the Plan as modified, revised, supplemented, or otherwise amended, and all Holders of Claims and Interests who are conclusively deemed to have rejected the Plan are deemed to have rejected the Plan as modified, revised, supplemented, or otherwise amended.

**XI. Issuance of New Equity Interests.**

18. Reorganized Parent shall be authorized to issue the New Equity Interests, including the Exit Term Loan Facility Backstop Commitment Premium, pursuant to its Corporate Governance Documents. The issuance of the New Equity Interests, including the Exit Term Loan Facility Backstop Commitment Premium, shall be authorized without the need for any further corporate action or without any further action by the Debtors or Reorganized Debtors. On the Effective Date, the New Equity Interests shall be issued and distributed as provided for in the Restructuring Transactions Memorandum pursuant to, and in accordance with, the Plan.

19. All of the shares (or comparable units) of New Equity Interests issued pursuant to the Plan, including the Exit Term Loan Facility Backstop Commitment Premium, shall be duly authorized, validly issued, fully paid, and non-assessable. Each distribution and issuance of New Equity Interests (including the New Equity Interests issued in connection with the Exit Term Loan Facility Backstop Commitment Premium) shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, including the Corporate Governance Documents, which terms and conditions shall bind each Entity receiving such distribution or issuance. Any Entity's acceptance of New Equity Interests shall be deemed as its agreement to the Corporate Governance Documents, as the same may be amended or modified from time to time following the Effective Date in accordance with their terms. As a condition to receiving the New Equity Interests, all recipients of New Equity Interests pursuant to the MIP and the Exit Term Loan Facility Backstop Commitment Premium, shall be required to execute and deliver the New Investor Agreement; *provided, however*, that acceptance of such New Equity Interests constitutes deemed acceptance and consent to the terms of the New Investor Agreement, without the need for execution by any party thereto. For the avoidance of doubt, the Reorganized

Debtors, with the consent of SVP, may waive the requirement to receive an executed signature page to the New Investor Agreement. The New Investor Agreement will be effective as of the Effective Date, and, as of such date, will be deemed to be valid, binding, and enforceable in accordance with its terms, and each holder of New Equity Interests will be bound thereby in all respects. The New Equity Interests will not be registered under the Securities Act or listed on any exchange as of the Effective Date and will not meet the eligibility requirements of DTC.

## XII. Compliance with Bankruptcy Code Requirements—Section 1129(a)(1).

20. The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including sections 1122 and 1123 of the Bankruptcy Code. In addition, the Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a). The injunction, release, and exculpation provisions in the Disclosure Statement and the Plan describe, in bold font and with specific and conspicuous language, all acts to be enjoined, released, and exculpated and identify the Entities that will be subject to the injunction, releases, and exculpations, thereby satisfying Bankruptcy Rule 3016(c).

### A. Proper Classification—Sections 1122 and 1123.

21. The classification of Claims and Interests under the Plan is proper under the Bankruptcy Code. Pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article III of the Plan provides for the separate classification of Claims and Interests into eleven Classes based on differences in the legal nature or priority of such Claims and Interests (other than the DIP Claims, Administrative Claims, Professional Fee Claims, and Priority Tax Claims, which are addressed in Article II of the Plan and which are not required to be designated as separate classes pursuant to section 1123(a)(1) of the Bankruptcy Code). Valid business, factual, and legal reasons exist for the separate classification of such Classes of Claims and Interests. The classifications reflect no improper purpose and do not unfairly discriminate between, or among, Holders of

Claims or Interests. In accordance with section 1122(a) of the Bankruptcy Code, each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class. Accordingly, the Plan satisfies the requirements of sections 1122(a) and 1123(a)(1) of the Bankruptcy Code.

**B. Specified Unimpaired Classes—Section 1123(a)(2).**

22. Article III of the Plan specifies that Claims in Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), Class 3 (ABL Claims), Class 4 (FILO Claims), and Class 7 (General Unsecured Claims) are Unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code. Claims in Class 8 (Intercompany Claims) and Interests in Class 9 (Intercompany Interests) are either Unimpaired and conclusively presumed to have accepted the Plan or are Impaired and deemed to have rejected the Plan, and, in either event, are not entitled to vote to accept or reject the Plan.

23. Additionally, Article II of the Plan specifies that Allowed Administrative Claims, DIP Claims, Professional Fee Claims, and Priority Tax Claims will be paid in full or otherwise Unimpaired in accordance with the terms of the Plan, although these Claims are not classified under the Plan. Accordingly, the Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code.

**C. Specified Treatment of Impaired Classes—Section 1123(a)(3).**

24. Article III of the Plan specifies that Claims and Interests in Class 5 (First Lien Claims), Class 6 (Junior Funded Debt Claims), Class 10 (Existing Equity Interests), and Class 11 (Section 510(b) Claims) are Impaired under the Plan, within the meaning of section 1124 of the Bankruptcy Code (collectively, the "Impaired Classes"), and describes the treatment of such Impaired Classes. Accordingly, the Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.

**D. No Discrimination—Section 1123(a)(4).**

25. Article III of the Plan provides for the same treatment by the Debtors for each Claim or Interest within a particular Class unless the Holder of a particular Claim or Interest has accepted a less favorable treatment with respect to such Claim or Interest, such as the Holders of Allowed NewCo Notes Claims and First Lien Deficiency Claims waiving any and all recovery on account of such Claims they would otherwise be entitled to as Holder of Claims in Class 6 (Junior Funded Debt Claims); *provided* that Class 6 votes to accept the Plan. Accordingly, the Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

**E. Adequate Means for Plan Implementation—Section 1123(a)(5).**

26. The provisions of the Plan, including Article IV, together with the exhibits and attachments to the Plan (including the Plan Supplement) and the Disclosure Statement, provide in detail the adequate and proper means for the cancellation of documents evidencing existing Claims and Interests and implementation of the transactions provided for in the Plan, including, among other things: (a) the Restructuring Transactions; (b) the sources of consideration for Plan distributions; (c) the consummation of the Exit Facilities, including the execution, delivery, and filing of all Exit Facility Documents; (d) the issuance and distribution of the New Equity Interests; (e) the adoption of the Corporate Governance Documents; (f) the consummation of various corporate transaction steps necessary to implement the new corporate structure upon emergence; and (g) the preservation of Causes of Action and release of Avoidance Actions. In addition to these core transactions, the Plan sets forth the other critical mechanics of the Debtors' emergence, such as the vesting of Estate assets in the Reorganized Debtors, the assumption of Executory Contracts and Unexpired Leases, and the settlement of Claims and Interests. The precise terms governing the execution of certain of these transactions are set forth in the applicable Definitive

Documents or forms of agreements included in the Plan Supplement. Accordingly, the Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

**F. Voting Power of Equity Securities—Section 1123(a)(6).**

27. The Corporate Governance Documents and Article IV.I of the Plan prohibit the issuance of non-voting equity Securities to the extent required to comply with section 1123(a)(6) of the Bankruptcy Code. Accordingly, the Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code.

**G. Directors and Officers—Section 1123(a)(7).**

28. As of the Effective Date, the term of the current members of the board of directors or other Governing Body of each of the Debtors shall expire, such current directors shall be deemed to have resigned, and all of the directors for the initial term of the New Board and the other Governing Bodies shall be appointed in accordance with the Corporate Governance Documents. The known members of the New Board and the officers of the Reorganized Debtors were identified in Exhibit D of the Plan Supplement. Each such member and officer of the Reorganized Debtors shall serve from and after the Effective Date pursuant to the terms of the applicable Corporate Governance Documents and other constituent documents of the Reorganized Debtors.

29. The foregoing manner of selection of the officers, directors, or trustees (or any successor of any officer, director, or trustee) of the Reorganized Debtors is consistent with the interests of all Holders of Claims and Interests and with public policy. Accordingly, the Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

**H. Impairment/Unimpairment of Classes—Section 1123(b)(1).**

30. The Plan is consistent with section 1123(b)(1) of the Bankruptcy Code. Article III of the Plan Impairs or leaves Unimpaired, as applicable, each Class of Claims and Interests, as contemplated by section 1123(b)(1) of the Bankruptcy Code.

**I. Assumption—Section 1123(b)(2).**

31. Article V.A of the Plan provides that, except as otherwise provided in the Plan, and subject to the consent of SVP, all Executory Contracts and Unexpired Leases shall be deemed assumed as of the Effective Date, unless such Executory Contract or Unexpired Lease was (a) previously assumed, amended and assumed, assumed and assigned, or rejected by the applicable Debtors; (b) previously expired or terminated pursuant to its own terms; or (c) is the subject of a motion to reject such executory contract or unexpired lease that is pending on the Effective Date; *provided, however*, that neither the Restructuring nor the transactions contemplated by the Plan will constitute a change of control or other acceleration event for purposes of any Executory Contract or Unexpired Lease of the Debtors. The Debtors provided sufficient notice to each non-Debtor counterparty to an Executory Contract or Unexpired Lease assumed or assumed and assigned by the Debtors during these Chapter 11 Cases, as applicable. Accordingly, the Plan is consistent with sections 1123(b)(1) and 1123(b)(2) of the Bankruptcy Code.

**J. Discharge, Release, Injunction, Exculpation, and Related Provisions—Section 1123(b)(3).**

32. The Plan is consistent with section 1123(b)(3) of the Bankruptcy Code. Article VIII.C of the Plan describes certain releases granted by the Debtors (the "Debtor Release"), Article VIII.D of the Plan provides for the Third-Party Release, Article VIII.E of the Plan provides for exculpation for the Exculpated Parties (the "Exculpation"), and Article VIII.F of the Plan provides for an injunction (the "Injunction"). The Bankruptcy Court has jurisdiction under sections 1334(a) and 1334(b) of the Judicial Code and authority under section 105 of the Bankruptcy Code to approve each of the Debtor Release, the Third-Party Release, the Exculpation, and the Injunction. As has been established based upon the evidence presented at the Confirmation Hearing (including the Declarations), the Debtor Release, the Third-Party Release, the

Exculpation, and the Injunction (a) are the product of extensive, arm's-length, good faith negotiations among the Debtors and their principal constituencies, including the Consenting Stakeholders, that resulted in agreement on the terms of the Plan and the execution of the RSA, (b) were an express condition of the Consenting Stakeholders for entry into the RSA and agreeing to the terms of the Plan; (c) were given in exchange for good, valuable, and adequate consideration after due notice and opportunity for hearing, (d) are appropriately tailored under the facts and circumstances of these Chapter 11 Cases, (e) were integral to the agreements and settlements among the various parties in interest and are essential to the formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy Code, (f) confer substantial benefits on the Estates, (g) are fair, equitable, and reasonable, and (h) are in the best interests of the Debtors, the Estates, and parties in interest. Further, the failure to implement the Debtor Release, Third-Party Release, Exculpation, or Injunction would impair the Debtors' ability to confirm and implement the Plan.

a. *Debtor Release*.

33. The Debtors have satisfied the business judgment standard with respect to the propriety of the Debtor Release set forth in Article VIII.C of the Plan. The Debtor Release is a necessary and integral element of the Plan, a component of the comprehensive settlement to be implemented pursuant to the Plan, and is fair, reasonable, and in the best interests of the Debtors, the Estates, Holders of Claims and Interests, and all of the Debtors' stakeholders. The Debtors' or the Reorganized Debtors' pursuit of any such claims and Causes of Action against the Released Parties is not in the best interests of the Estates' various constituencies because the costs involved significantly outweigh any potential benefit from pursuing such claims and Causes of Action. The Debtors do not believe that they have material Causes of Action against any of the Released Parties that would justify the risk, expense, and delay of pursuing any such causes of action as compared

to the results and benefits achieved under the Plan. The Debtor Release, as set forth in Article VIII.C of the Plan, is: (a) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contribution to facilitating the Restructuring Transactions and implementing the Plan; (b) a good faith settlement and compromise of the claims released by the Debtor Release; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for a hearing; and (f) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any claim or Cause of Action released pursuant to the Debtor Release. Importantly, no economic stakeholders have objected to the Debtor Release contained in the Plan. All of the creditors in the Voting Classes voted to accept the Plan (including the Debtor Release).

34. The Debtor Release appropriately offers protection to parties who provided consideration to the Debtors and who participated in the Debtors' restructuring process, including the Consenting Stakeholders, whose participation in the Chapter 11 Cases was critical to the Debtors' successful implementation of the Restructuring Transactions and emergence. Specifically, the Released Parties under the Plan made significant concessions and contributions to these Chapter 11 Cases, including, as applicable, (i) negotiating and actively supporting the Plan and the Chapter 11 Cases, (ii) providing necessary liquidity for the Debtors during the Chapter 11 Cases, (iii) settling and compromising substantial rights and Claims against the Debtors under the Plan, and (iv) proposing, negotiating in good faith, and ultimately consummating the value-maximizing Restructuring Transactions contemplated by the Plan for the benefit of the Debtors, their Estates, and all parties in interest.

35. In particular, in exchange for the Debtor Release, Released Parties in Classes 3, 4, and 5, as applicable, contributed direct value in the form of their agreement to (i) equitize secured debt, (ii) commit new capital to fund both the Chapter 11 Cases—including distributions to be made to otherwise out-of-the-money creditors upon emergence—and the go-forward business, (iii) consent to the Debtors' use of Cash Collateral, and (iv) have otherwise agreed to be impaired while providing full recoveries to General Unsecured Creditors. In addition, the Debtor Release was a material inducement for the Consenting Stakeholders to support the Debtors' restructuring as set forth in the RSA. Finally, the Debtors' directors, officers, professionals, and other agents have been instrumental in negotiating, formulating, and implementing the restructuring transactions contemplated by the Plan. The Released Parties played an integral role in the formulation of the Plan, made significant contributions that are essential to the Plan's success, and expended significant time and resources analyzing and negotiating the Plan and the issues presented by the Debtors' prepetition capital structure.

36. The scope of the Debtor Release is appropriately tailored under the facts and circumstances of the Chapter 11 Cases. In addition, consistent with the investigation conducted by the Debtors' Special Committee and as set forth in the Foster Declaration, the Debtor Release expressly excludes a release of the Non-Released Claims which the Special Committee concluded could have merit and thus should be preserved. The Debtor Release is appropriate in light of, among other things, the value provided by the Released Parties to the Estates and the critical nature of the Debtor Release to the Plan.

37. Notwithstanding anything to the contrary in the Plan or this Confirmation Order, no Entity shall be a Released Party if such Entity is not a Releasing Party.

b. *Third-Party Release.*

38. The Third-Party Release, as set forth in Article VIII.D of the Plan, is: (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the restructuring process and implementing the Plan; (d) a good faith settlement and compromise of the claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for a hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

39. Like the Debtor Release, the Third-Party Release was critical to incentivizing parties to support the Plan, facilitated participation in the RSA and the chapter 11 process generally, and prevents significant, time-consuming, and value-destructive litigation. For months prior to the commencement of these Chapter 11 Cases, the Released Parties worked constructively with the Debtors to negotiate and implement a value-maximizing reorganization embodied in the Plan that enables the Reorganized Debtors to emerge from these Chapter 11 Cases with a right-sized capital structure and viable go-forward business plan. Such parties have provided material concessions, benefits, and commitments to the Debtors through the RSA and during the pendency of the cases. In particular, certain of the Released Parties consented to the Debtors' use of Cash Collateral, funded the DIP ABL Facility and the DIP Term Loan Facility, and committed to providing the Exit Facilities upon the Effective Date, all of which are necessary to fund the Chapter 11 Cases through emergence. Further, without the concession by the Ad Hoc Group and

SVP to equitize their First Lien Claims, Holders of General Unsecured Claims would not receive a full recovery in these Chapter 11 Cases. Without the Third-Party Release, the Debtors' key stakeholders would not have been willing to fund and otherwise support the Restructuring Transactions contemplated by the Plan, which will enable the Debtors to emerge from bankruptcy with a deleveraged balance sheet while paying or Reinstating Claims held by their trade and known General Unsecured Creditors. As such, the Third-Party Release appropriately offers certain protections to parties who constructively participated in the Debtors' restructuring process.

40. There is an identity of interests between the Debtors and the Entities that will benefit from the Third-Party Release. Each of the Released Parties were stakeholders and/or critical participants in the Chapter 11 Cases and the Plan process and share a common goal with the Debtors in seeing the Plan succeed. The scope of the Third-Party Release is also appropriately tailored to the facts and circumstances of the Chapter 11 Cases. For the reasons set forth above, each of the Released Parties has also made significant concessions and contributions to the Chapter 11 Cases.

41. The Third-Party Release is consensual as to all relevant parties, including all Releasing Parties, because: (a) the Releasing Parties were provided adequate notice of the Chapter 11 Cases, the Plan, and the Opt-Out Procedures; (b) all Holders of Claims in the Voting Classes had the opportunity to opt out of the Third-Party Release through their Ballots and were properly informed that Holders of Claims in the Voting Classes that did not check a prominently featured and clearly labeled box on the applicable Ballot, returned in advance of the Voting Deadline, would be deemed to have expressly, unconditionally, generally, individually, and collectively consented to the release and discharge of all claims and Causes of Action against the Debtors and the Released Parties; (c) Holders of Claims against or Interests in the Debtors that

were not entitled to vote to accept or reject the Plan had the opportunity to opt out of the Third-Party Release through the applicable Notice of Non-Voting Status and Opt-Out Form; and (d) the release provisions of the Plan were conspicuous and emphasized with boldface type in the Plan, the Disclosure Statement, the Confirmation Hearing Notice, the Ballots, and the Notices of Non-Voting Status and Opt-Out Form. Among other things, the Plan provides appropriate and specific disclosure with respect to the claims and Causes of Action that are the subject of the Third-Party Release, and no other disclosure is necessary. The Confirmation Hearing Notice sent to Holders of Claims and Interests and published in *The New York Times* (national edition) on September 13, 2024, and *The New York Times* (international edition) on September 17, 2024, the Ballots sent to all Holders of Claims entitled to vote on the Plan, and the Notice of Non-Voting Status and Opt-Out Form sent to all Holders of Claims and Interests either presumed to have accepted or deemed to have rejected the Plan, in each case, unambiguously stated that the Plan contains the Third-Party Release. The Releasing Parties were given due and adequate notice of the Third-Party Release, and thus the Third-Party Release is consensual under controlling precedent as to those Releasing Parties that did not elect to opt out of granting the Third-Party Release.

42. In light of the foregoing, the Third-Party Release is approved in its entirety.

c. *Exculpation*.

43. The Exculpation provided by Article VIII.E of the Plan for the benefit of the Exculpated Parties—all of which are Estate fiduciaries and constructively participated in and contributed to the Debtors' chapter 11 process consistent with their duties under the Bankruptcy Code— and is appropriately tailored to the circumstances of these Chapter 11 Cases. The record in the Chapter 11 Cases fully supports the Exculpation only to the extent provided by

section 1125(e) of the Bankruptcy Code, which is appropriately tailored to protect the Exculpated Parties from inappropriate litigation. The Exculpation, including the carve out for actual fraud, willful misconduct, or gross negligence, is consistent with section 1125(e) of the Bankruptcy Code.

44. The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

d. *Injunction*.

45. The Injunction set forth in Article VIII.F of the Plan is necessary to implement, preserve, and enforce the Debtors' discharge, the Debtor Release, the Third-Party Release, and the Exculpation, and is narrowly tailored to achieve this purpose.

e. *Preservation of Causes of Action*.

46. The provisions regarding the preservation of Causes of Action in the Plan (including Article IV.R), including the Plan Supplement, are appropriate, fair, equitable, and reasonable, and are in the best interests of the Debtors, the Estates, and Holders of Claims and Interests.

47. Article IV.R of the Plan appropriately provides for the preservation by the Debtors of certain Causes of Action in accordance with section 1123(b)(3)(B) of the Bankruptcy Code. The Plan provides that each Reorganized Debtor shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action of the Debtors, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of

Retained Causes of Action, and the Reorganized Debtors' rights to commence, prosecute, or settle such retained Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date or any other provision of the Plan to the contrary, other than the Causes of Action released by the Debtors pursuant to the releases and Exculpation contained in the Plan, including in Article VIII thereof, which shall be deemed released and waived by the Debtors and the Reorganized Debtors as of the Effective Date.

48. The provisions regarding the preservation of Causes of Action in the Plan, including those contained in the Plan Supplement, are appropriate, fair, equitable, and reasonable and are in the best interests of the Debtors and their Estates. For the avoidance of doubt, Causes of Action released or exculpated under the Plan will not be retained by the Reorganized Debtors.

f. *Lien Release.*

49. Except as otherwise provided in the Exit Facility Documents, this Confirmation Order, the Plan, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim or any related Claim that may be asserted against a non-Debtor Affiliate, in satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to Reinstate in accordance with the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates or any non-Debtor Affiliate shall be fully released and discharged, and all of the right, benefit, title, and interest of any Holder (and the applicable Agents of such Holder, including the Agents/Trustees) of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert and, as applicable, be reassigned, surrendered, reconveyed, or retransferred to the Reorganized Debtors and their successors and

assigns, as set forth in Article VIII.B of the Plan (the "Lien Releases"). Any Holder of such Secured Claim or Claim against a non-Debtor Affiliate (and the applicable agents for such Holder, including the Agents/Trustees) shall be authorized and directed, at the sole cost and expense of the Reorganized Debtors, to release any collateral or other property of any Debtor or non-Debtor Affiliate (including any Cash Collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder, including the Agents/Trustees) and to take such actions as may be reasonably requested by the Reorganized Debtors to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases. The provisions of the Lien Releases are appropriate, fair, equitable, and reasonable and in the best interests of the Debtors, their Estates, and Holders of Claims and Interests.

50. For the avoidance of doubt, pursuant to Bankruptcy Rule 3020(c)(1), the following provisions in the Plan are hereby approved and will be effective immediately on the Effective Date without further order or action by the Bankruptcy Court, any of the parties to such release, or any other Entity: (a) the Debtor Release, (b) the Third-Party Release, (c) the Exculpation, and (d) the Injunction.

51. The discharge, release, injunction, exculpation, and related provisions set forth in Article VIII of the Plan are hereby approved and authorized in their entirety.

**K. Additional Plan Provisions—Section 1123(b)(6).**

52. The other discretionary provisions of the Plan, including the Plan Supplement, are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

**L. Cure of Defaults—Section 1123(d).**

53. The Debtors or the Reorganized Debtors, as applicable, shall pay Cures, if any, on the Effective Date or as soon as reasonably practicable thereafter. Unless otherwise agreed upon

in writing by the parties to the applicable Executory Contract or Unexpired Lease, all requests for payment of Cure costs that differ from the amounts paid or proposed to be paid by the Debtors or the Reorganized Debtors to a counterparty must be Filed with the Bankruptcy Court on or before twenty (20) days after the Effective Date. Any such request that is not timely Filed shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Debtor or Reorganized Debtor, without the need for any objection by the Debtors or Reorganized Debtors or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court. Any Cure costs shall be deemed fully satisfied, released, and discharged upon payment by the Debtors or the Reorganized Debtors of the applicable Cure costs; *provided, however*, that nothing in the Plan shall prevent the Reorganized Debtors from paying any Cure costs despite the failure of the relevant counterparty to File such request for payment of such Cure costs. The Reorganized Debtors also may settle any Cure costs without any further notice to or action, order, or approval of the Bankruptcy Court. Any objection to the assumption of an Executory Contract or Unexpired Lease under the Plan must be Filed with the Bankruptcy Court on or before the Effective Date. Any such objection will be scheduled to be heard by the Bankruptcy Court at the Confirmation Hearing or such other setting as requested by the Debtors for which such objection is timely Filed. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption.

54. If there is any dispute regarding any Cure costs, the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption, then payment of any Cure costs shall occur as soon as reasonably practicable after (a) entry of a Final Order

resolving such dispute, approving such assumption (and, if applicable, assignment), or (b) as may be agreed upon by the Debtors (with the consent of SVP) or the Reorganized Debtors, as applicable, and the counterparty to the Executory Contract or Unexpired Lease. The Debtors (with the consent of SVP) and the Reorganized Debtors, as applicable, reserve the right at any time to move to reject any Executory Contract or Unexpired Lease based upon the existence of any such unresolved dispute.

**XIII. Debtor Compliance with the Bankruptcy Code—Section 1129(a)(2).**

55. The Debtors have complied with the applicable provisions of the Bankruptcy Code, and, thus, satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code. Specifically, each Debtor:

a. is eligible to be a debtor under section 109 of the Bankruptcy Code and a proper proponent of the Plan under section 1121(a) of the Bankruptcy Code;

b. has complied with the applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by Final Order of the Bankruptcy Court; and

c. has complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126 thereof, the Bankruptcy Rules, the Local Rules, any applicable non-bankruptcy Law, rule, and regulation, the Scheduling Order, and all other applicable Law in transmitting the Solicitation Packages, related documents and notices, and in soliciting and tabulating the votes on the Plan.

56. The Debtors and their agents have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with respect to the offering, issuance, and distribution of recoveries under the Plan and will therefore be entitled to the protections of section 1125 of the Bankruptcy Code.

**XIV. Plan Proposed in Good Faith—Section 1129(a)(3).**

57. The Debtors have proposed the Plan and the Restructuring Transactions (and all documents necessary to effectuate the Plan (including the Plan Supplement)) in good faith and not by any means forbidden by Law. In so determining, the Bankruptcy Court has examined the

totality of the circumstances surrounding the Filing of these Chapter 11 Cases, including the Declarations, the Plan, the Disclosure Statement, the RSA, the process leading to Confirmation, including the extensive, good faith, arm's-length negotiations among the Debtors and their stakeholders, the unanimous support of each Class of Holders of Claims entitled to vote on the Plan, and the transactions to be implemented pursuant thereto. These Chapter 11 Cases were Filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to implement the Restructuring Transactions, reorganize, and emerge from these Chapter 11 Cases with a capital and organizational structure that will allow them to conduct their businesses and satisfy their obligations with sufficient liquidity and capital resources.

58. The Plan is the product of good faith, arm's-length negotiations by and among the Debtors and the Consenting Stakeholders, among others. The Plan itself and the process leading to its formulation provides independent evidence of the Debtors' and such other parties' good faith, serves the public interest, and assures fair treatment of Holders of Claims and Interests. Consistent with the overriding purpose of chapter 11, the Debtors Filed the Chapter 11 Cases with the belief that the Debtors were in need of reorganization, and the Plan was negotiated and proposed with the intention of accomplishing a successful reorganization and maximizing stakeholder value and for no ulterior purpose. Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

## XV. Payment for Services or Costs and Expenses—Section 1129(a)(4).

59. The procedures set forth in the Plan for the Bankruptcy Court's review and ultimate determination of the fees and expenses to be paid by the Debtors in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.

**XVI. Directors, Officers, and Insiders—Section 1129(a)(5).**

60. The Plan sets forth the structure of the New Board, and the identities of and/or the process for appointment of the New Board were disclosed in the Plan Supplement. The appointment to, or continuance in, the office of the applicable persons is consistent with the interests of Holders of Claims and Interests, and with public policy. Accordingly, the Debtors have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code.

**XVII. No Rate Changes—Section 1129(a)(6).**

61. Section 1129(a)(6) of the Bankruptcy Code is not applicable to these Chapter 11 Cases. The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission.

**XVIII. Best Interests of Creditors—Section 1129(a)(7).**

62. The Liquidation Analysis attached as Exhibit E to the Disclosure Statement, the Turner Declaration, and the other evidence related thereto in support of the Plan that was proffered at, prior to, or in connection with the Confirmation Hearing: (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that Holders of Allowed Claims and Interests in each Class will recover at least as much under the Plan on account of such Claim or Interest, as of the Effective Date, as such Holder would receive if the Debtors were liquidated, on the Effective Date, under chapter 7 of the Bankruptcy Code. As a result, the Debtors have demonstrated that the Plan is in the best interests of their creditors, and the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

**XIX. Acceptance by Certain Classes—Section 1129(a)(8).**

63. Class 1, Class 2, Class 3, Class 4, and Class 7 are the Unimpaired Classes, each of which is conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code. The Voting Classes, each of which is entitled to vote on the Plan, are Impaired. As evidenced by the Voting Report, each of the Voting Classes has voted to accept the Plan. Class 8 and Class 9 are either Unimpaired and conclusively presumed to have accepted the Plan (to the extent Reinstated) or are Impaired and deemed to have rejected the Plan (to the extent cancelled and released), and, in either event, are not entitled to vote to accept or reject the Plan. Pursuant to the Plan, Holders of Interests in Class 10 (Existing Equity Interests) and Holders of Claims in Class 11 (Section 510(b) Claims) are Impaired, receive no recovery on account of their Claims and Interests, and are deemed to have rejected the Plan. Although the Plan does not satisfy section 1129(a)(8) of the Bankruptcy Code with respect to Class 10 and Class 11, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to such Classes as set forth in paragraph 70 herein and thus satisfies section 1129(b) of the Bankruptcy Code.

**XX. Treatment of Claims Entitled to Priority Under Section 507(a) of the Bankruptcy Code—Section 1129(a)(9).**

64. The treatment of Allowed Administrative Claims, Professional Fee Claims, DIP Claims, and Priority Tax Claims under Article II of the Plan, satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

**XXI. Acceptance by at Least One Impaired Class—Section 1129(a)(10).**

65. As evidenced by the Voting Report, Holders of Claims in Class 5 (First Lien Claims) and Class 6 (Junior Funded Debt Claims) voted to accept the Plan by the requisite number and amount of Claims at each Debtor, determined without including any acceptance of the Plan by

any insider (as that term is defined in section 101(31) of the Bankruptcy Code), as specified under the Bankruptcy Code. As such, there is at least one Class of Claims that is Impaired under the Plan and has accepted the Plan. Accordingly, the requirements of section 1129(a)(10) of the Bankruptcy Code are satisfied.

**XXII. Feasibility—Section 1129(a)(11).**

66. The Financial Projections attached as Exhibit C to the Disclosure Statement, the Johnston Declaration, and the other evidence supporting Confirmation proffered or adduced by the Debtors at, prior to, or in the Declarations Filed in connection with, the Confirmation Hearing: (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; (d) establish that the Plan is feasible and Confirmation is not likely to be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtors or any successor to the Reorganized Debtors under the Plan, except as provided in the Plan; and (e) establish that the Reorganized Debtors will have sufficient funds available to meet their obligations under the Plan. Accordingly, the Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

**XXIII. Payment of Statutory Fees—Section 1129(a)(12).**

67. Article II.E of the Plan provides for the payment of all fees due and payable by the Debtors pursuant to section 1930(a) of title 28 of the United States Code on the Effective Date, and after the Effective Date, the Debtors and the Reorganized Debtors shall be jointly and severally liable to pay any and all Quarterly Fees when due and payable. The Debtors and the Reorganized Debtors shall remain obligated to pay Quarterly Fees to the Office of the U.S. Trustee the earliest of the Debtor's case being closed, dismissed or converted to a case under chapter 7 of the

Bankruptcy Code. Accordingly, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

**XXIV. Continuation of Employee Benefits—Section 1129(a)(13).**

68. Except as otherwise specified in the Plan, Article V.G of the Plan provides that all Compensation and Benefits Programs shall be assumed by the Reorganized Debtors, except for: (a) all employee equity or equity-based incentive plans, and any provisions set forth in the Compensation and Benefits Programs that provide for rights to acquire Interests, Existing Equity Interests, or New Equity Interests, which shall not constitute or be deemed to constitute Executory Contracts and shall be deemed terminated on the Effective Date; (b) Compensation and Benefits Programs that have been rejected pursuant to an order of a Bankruptcy Court; and (c) Compensation and Benefits Programs that, as of the entry of this Confirmation Order, have been specifically waived by the beneficiaries of any employee benefit plan or contract. From and after the Effective Date, all retiree benefits (as defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable Law. Accordingly, the Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code.

**XXV. Non-Applicability of Certain Sections—Sections 1129(a)(14), (15), and (16).**

69. Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to the Chapter 11 Cases. The Debtors do not owe domestic support obligations, are not individuals, and are not nonprofit corporations.

**XXVI. "Cram Down" Requirements—Section 1129(b).**

70. Notwithstanding the fact that the Deemed Rejecting Classes have been deemed to have rejected the Plan, the Plan is confirmable pursuant to section 1129(b)(1) of the Bankruptcy Code. ***First***, all of the requirements of section 1129(a) of the Bankruptcy Code, other than section 1129(a)(8) of the Bankruptcy Code, have been met. ***Second***, the Plan does not unfairly

discriminate with respect to the Impaired Classes that have not voted to accept the Plan. The Plan's treatment of the Deemed Rejecting Classes is proper because the Plan's classification scheme rests on a legally acceptable rationale. Moreover, under the Plan, (a) no Holder of a Claim or Interest junior to each such Deemed Rejecting Class will receive any recovery under the Plan on account of such junior Claim or Interest, and (b) no Holder of a Claim or Interest in a Class senior to such Class is receiving more than 100 percent on account of its Claim or Interest. Accordingly, the Plan is fair and equitable with respect to the Impaired Classes that have not voted to accept the Plan. ***Third***, Holders of Claims in the Voting Classes voted to accept the Plan in sufficient number and in sufficient amount to constitute accepting classes under the Bankruptcy Code. The Plan may therefore be confirmed even though not all Impaired Classes have voted to accept the Plan.

**XXVII. Only One Plan—Section 1129(c).**

71. The Plan (including any previous versions thereof) is the only chapter 11 plan Filed for each of the Debtors in each of these Chapter 11 Cases and, accordingly, satisfies section 1129(c) of the Bankruptcy Code.

**XXVIII. Principal Purpose of the Plan—Section 1129(d).**

72. As evidenced by its terms, the principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act. Accordingly, the requirements of section 1129(d) of the Bankruptcy Code have been satisfied.

**XXIX. Not Small Business Cases—Section 1129(e).**

73. The Chapter 11 Cases are not small business cases, and accordingly, section 1129(e) of the Bankruptcy Code does not apply to these Chapter 11 Cases.

**XXX. Good Faith Solicitation—Section 1125(e).**

74. The Debtors, the Consenting Creditors, and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, managers,

employees, advisors, and attorneys, as applicable, have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules in connection with all of their respective activities relating to the support of the Plan and Consummation, including among other things, the execution, delivery, and performance of and under the RSA, the issuance of the New Equity Interests, including the shares issued pursuant to the Exit Term Loan Facility Backstop Commitment Premium, the extension of financing under the DIP Term Loan Facility, the DIP ABL Facility, and the Exit Facilities, and the solicitation of acceptances of the Plan, as applicable, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

**XXXI. Satisfaction of Confirmation Requirements.**

75. Based on the foregoing, and all other pleadings and evidence proffered or adduced at or prior to the Confirmation Hearing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

**XXXII. Likelihood of Satisfaction of Conditions Precedent to the Effective Date.**

76. Each of the conditions precedent to the Effective Date, as set forth in Article IX.A of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with Article IX.B of the Plan.

**XXXIII. Implementation.**

77. All documents and agreements necessary to implement the Plan, including those contained in the Plan Supplement, the Definitive Documents, and all other relevant and necessary or desirable documents, have been or will be negotiated in good faith and at arm's-length, are in the best interests of the Debtors, and shall, upon completion of documentation and execution, be valid, binding, and enforceable documents and agreements not in conflict with any federal, state, or local law.

**XXXIV. <u>Disclosure of Facts</u>.**

78. The Debtors have disclosed all material facts regarding the Plan, the Plan Supplement, and the adoption, execution, and implementation of the other matters provided for under the Plan involving action to be taken by or required of the Debtors.

**XXXV. <u>Good Faith</u>.**

79. The Debtors have proposed the Plan in good faith, with the legitimate and honest purpose of maximizing the value of the Debtors' Estates for the benefit of their stakeholders. The Plan accomplishes this goal. Accordingly, the Debtors, the Released Parties, and the Exculpated Parties have been, are, and will continue to be acting in good faith within the meaning of section 1125(e) of the Bankruptcy Code if they proceed to: (a) consummate the Plan, the Restructuring Transactions, and the agreements, settlements, transactions, transfers, and other actions contemplated thereby, regardless of whether such agreements, settlements, transactions, transfers, and other actions are expressly authorized by this Confirmation Order; and (b) take any actions authorized and directed or contemplated by this Confirmation Order. The Released Parties have made a substantial contribution to the Debtors' reorganization.

80. The Legacy Notes Trustee diligently and in good faith discharged its duties and obligations under the Legacy Notes Documents and otherwise conducted itself with the same degree of care and skill that a prudent person would exercise under the circumstances with respect to all matters in any way related to the Legacy Notes Documents and related transactions. The Holders of Legacy Notes Claims have not received disparate treatment under the Plan or any related or ancillary transactions or agreements, and their treatment is consistent with the terms and conditions under the Legacy Notes Documents.

**XXXVI. Valuation.**

81. The evidence with respect to the valuation analysis of the Debtors set forth in Exhibit D of the Disclosure Statement and introduced at the Confirmation Hearing and in the Braun Declaration provides the basis for, and support for, the distributions and recoveries to Holders of Claims and Interests, as applicable, under the Plan, is reasonable, persuasive, and credible, and uses reasonable and appropriate methodologies and assumptions. Given such valuation of the Debtors, pursuant to the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, the Plan's treatment of Claims and Interests is appropriate and reasonable as set forth herein.

**XXXVII. Legacy Notes Settlement.**

82. In accordance with section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, the Legacy Notes Settlement by and between the Debtors, the Consenting Stakeholders, and the Legacy Notes Trustee, as set forth in the Plan and this Confirmation Order, constitute a good-faith compromise of the settled claims and disputes held by the Legacy Notes Trustee and such compromise and settlement are fair, equitable, and reasonable and in the best interest of the Debtors, the Reorganized Debtors, and their Estates. Pursuant to the Legacy Notes Settlement, and in addition to the terms set forth in the Plan, which shall be deemed approved in all respects upon entry of this Confirmation Order, the Debtors, Consenting Stakeholders, and Legacy Notes Trustee agree that notwithstanding anything to the contrary in the Plan or this Confirmation Order, all Holders of Allowed NewCo Notes Claims shall waive any and all recovery, and therefore receive no recovery, that they would otherwise be entitled to as Holders of Claims in Class 6 as provided pursuant to Article III of the Plan.

## ORDER

**IT IS DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:**

83. **Findings of Fact and Conclusions of Law**. The above-referenced findings of fact and conclusions of Law are hereby incorporated by reference as though fully set forth herein and constitute findings of fact and conclusions of Law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014. To the extent that any finding of fact is determined to be a conclusion of Law, it is deemed so, and vice versa.

84. **Disclosure Statement**. The information provided in the Disclosure Statement is adequate, and the Disclosure Statement is **APPROVED** in all respects.

85. **Confirmation of the Plan**. The Plan, a copy of which is attached hereto as **Exhibit A**, as may be further amended by this Confirmation Order, is approved in its entirety and **CONFIRMED** pursuant to section 1129 of the Bankruptcy Code. The terms of the Plan, including the Plan Supplement (including any supplements, amendments, or modifications thereof in accordance with this Confirmation Order, the Plan, and the RSA) and the Definitive Documents, are incorporated by reference into and are an integral part of this Confirmation Order.

86. **Solicitation**. The solicitation of votes on the Plan complied with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and was appropriate and satisfactory and is approved in all respects.

87. **Objections Overruled**. To the extent that any objections (including any reservations of rights, joinders, or statements contained therein) to final approval of the Disclosure Statement and/or Confirmation of the Plan have not been withdrawn, waived, or settled before entry of this Confirmation Order, are not cured by the relief granted in this Confirmation Order, or have not been otherwise resolved as stated on the record of the Confirmation Hearing, all such

objections (including any reservation of rights, joinders, or statements contained therein), except with respect to unresolved Cure disputes and objections to the assumption or rejection of Executory Contracts and Unexpired Leases, if any, are hereby overruled in their entirety and on the merits.

88. All objections to Confirmation not Filed and served prior to the Objection Deadline set forth in the Confirmation Hearing Notice (as may have been extended by the Debtors), if any, are deemed waived and shall not be considered by the Bankruptcy Court.

89. **Deemed Acceptance of Plan as Modified**. The Debtors modified the Plan subsequent to the Petition Date to address concerns raised by parties in interest and made certain nonmaterial clarifications. The Plan modifications are immaterial and comply with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019. Moreover, the Debtors' key constituents affected by such modifications support these changes. Accordingly, no additional solicitation or disclosure was required on account of the modifications and all Holders of Claims that voted to accept the Plan or who are conclusively presumed to accept the Plan are deemed to have accepted the Plan as modified, revised, supplemented, or otherwise amended (the "Plan Modifications"). No Holder of a Claim shall be permitted to change its vote as a consequence of the Plan Modifications.

90. **Effectiveness of All Actions**. All actions contemplated by, or necessary to, effectuate the Plan, including all actions in connection with the Plan Supplement, as the same may be modified from time to time prior to the Effective Date (including, without limitation, any restructuring transaction steps set forth in one or more documents contained in the Plan Supplement, including, but not limited to, the Restructuring Transactions Memorandum), are hereby authorized to be taken on, prior to, or after the Effective Date, as applicable, without further

application to or order of the Bankruptcy Court, or further action by the respective officers, directors, managers, members, or equity holders of the Debtors or the Reorganized Debtors, and with the effect that such actions had been taken by the unanimous action, consent, approval, and vote of each of such officers, directors, managers, members, or equity holders.

91. On or (as applicable) prior to the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, Securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Reorganized Debtors, including the New Equity Interests, Corporate Governance Documents, New Investor Agreement, the Exit Facility Documents, the Exit Term Loan Facility Backstop Commitment Letter, and any and all other agreements, documents, Securities, and instruments relating to the foregoing. To the fullest extent permitted by applicable law, the authorizations and approvals contemplated by Article IV of the Plan shall be effective notwithstanding any requirements under non-bankruptcy law.

92. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, and regulations, of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, agreements, any amendments or modifications thereto, and any other acts and transactions referred to in or contemplated by the Plan, the Plan Supplement, the Disclosure Statement, and any documents, instruments, Securities, agreements, and any amendments or modifications thereto.

93. **Means for Implementation of the Plan**. The provisions governing the means for implementation of the Plan set forth in Article IV of the Plan shall be, and hereby are, approved in their entirety. The Debtors are authorized to take all actions reasonably necessary to implement

the Plan on the terms set forth in Article IV. Upon the Effective Date, the Debtors or the Reorganized Debtors, as applicable, are authorized to make the payments or other distributions set forth in Article II and Article III of the Plan.

94. **Incorporation by Reference**. The terms and provisions of the Plan are incorporated by reference and are an integral part of this Confirmation Order. The terms of the Plan, the Plan Supplement, all exhibits thereto, this Confirmation Order, the Definitive Documents, and all other relevant and necessary documents shall, on and after the Effective Date, be binding in all respects upon, and shall inure to the benefit of, the Debtors, their Estates and their creditors and equity holders, and their respective successors and assigns, non-Debtor Affiliates, any affected third parties, all Holders of Interests, all Holders of any Claims, whether known or unknown, including, but not limited to, all contract counterparties, leaseholders, Governmental Units, and any trustees, examiners, administrators, responsible officers, estate representatives, or similar Entities for the Debtors, if any, subsequently appointed in any of the Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code of any of the Chapter 11 Cases, and each of their respective Affiliates, successors, and assigns.

95. **Exit Facilities**. On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtors shall enter into the Exit Facilities, as applicable, pursuant to the Exit Facility Documents. This Confirmation Order shall constitute (a) approval of the Exit Facilities and the Exit Facility Documents, as set forth in the Plan Supplement; and (b) authorization for the Debtors and the Reorganized Debtors, as applicable, to take any and all actions necessary or appropriate to consummate the Exit Facilities, including executing and delivering the Exit Facility Documents, in each case, without further notice to or order of the Bankruptcy Court. On and after the Effective Date, the Exit Facility Documents shall constitute

legal, valid, and binding obligations of the Reorganized Debtors, and shall be enforceable in accordance with their respective terms. As of the Effective Date, all of the claims, Liens, and security interests to be granted in accordance with the Exit Facility Documents: (a) shall be deemed to be granted; (b) shall be legal, valid, binding, and enforceable claims against the obligors under the Exit Facility Documents and Liens on, and security interests in, the collateral specified in the Exit Facility Documents; (c) shall, with respect to such Liens and security interests, be deemed automatically attached and perfected, subject only to such Liens and security interests as may be permitted under the Exit Facility Documents; and (d) shall not be enjoined or subject to discharge, impairment, release, avoidance, recovery, turnover, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent transfers, fraudulent conveyances, or voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law. The guarantees, pledges, Liens and other security interests granted to secure the obligations arising under the Exit Facility Documents have been granted in good faith, for legitimate business purposes, and for reasonably equivalent value as an inducement to the lenders thereunder to extend credit thereunder, shall be deemed to not constitute a fraudulent conveyance or fraudulent transfer, shall not otherwise be subject to avoidance, recharacterization, or subordination for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent conveyances or fraudulent transfers under the Bankruptcy Code or any applicable nonbankruptcy Law. The Exit Term Loan Facility Agent and the Exit ABL Facility Agent, as applicable, shall be authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or other law that would be applicable in the absence of the Plan and this Confirmation Order (it being understood

that perfection shall occur automatically by virtue of the entry of this Confirmation Order and any such filings, recordings, approvals, and consents shall not be required), and shall thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

96. **Cancellation of Existing Agreements, Notes, and Equity Interests**. The cancellation of existing agreements, notes, and Existing Equity Interests described in Article IV.G of the Plan (subject to the limitations set forth therein) and the release and discharge of mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates described in Article VIII.B of the Plan, are necessary to implement the Plan and are hereby approved. Such provisions are appropriate, fair, equitable, and reasonable, and are in the best interests of the Debtors, the Estates, and Holders of Claims and Interests.

97. Holders of mortgages, deeds of trust, Liens, pledges, or other security interests released pursuant to Article VIII.B of the Plan shall execute such documents and take any and all other steps as may be reasonably requested by the Debtors or the Reorganized Debtors, as applicable, to reflect or effectuate such releases, and all of the right, title, and interest of any Holders of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the applicable Reorganized Debtor and its successors and assigns.

98. **Surrender and Cancelled Instruments or Securities**. On the Effective Date, or as soon as reasonably practicable thereafter, each Holder (and the applicable Agents for such Holder, including the Agents/Trustees) of a certificate or instrument evidencing a Claim or an Interest that has been cancelled in accordance with Article IV.G of the Plan, shall be deemed to have surrendered such certificate or instrument to the Disbursing Agent. Such surrendered certificate or instrument shall be cancelled solely with respect to the Debtors and any non-Debtor

Affiliates, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties (other than the non-Debtor Affiliates) in respect of one another with respect to such certificate or instrument, including with respect to any indenture or agreement that governs the rights of the Holder of a Claim or Interest, which shall continue in effect for the purposes of allowing Holders to receive distributions under the Plan, charging Liens, priority of payment, and indemnification rights. Notwithstanding anything to the contrary in the Plan, the foregoing shall not apply to certificates or instruments evidencing Claims that are Unimpaired under the Plan.

99. **Indemnification**. Subject to the treatment of Section 510(b) Claims under the Plan, and to the fullest extent permitted under applicable Law (including being subject to the limitations of the Delaware General Corporation Law, including the limitations contained therein on a corporation's ability to indemnify officers and directors), with the exception of any indemnification obligations owed to any Non-Released Party owed in respect of the Non-Released Claims, all indemnification obligations in place as of the Effective Date (whether in the by-laws, certificates of incorporation or formation, limited liability company agreements, limited partnership agreements, other organizational documents, board resolutions, indemnification agreements, employment contracts, or otherwise) for the current and former members of any Governing Body, directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of, or acting on behalf of, the Debtors, as applicable, shall be Reinstated and remain intact, irrevocable, and shall survive the Effective Date on terms no less favorable to such current and former members of any Governing Body, directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of, or acting on behalf of, the Debtors than the indemnification provisions in place prior to the Effective Date; *provided* that nothing herein shall expand any of the Debtors' indemnification obligations in place as of the Petition Date or constitute a finding or conclusion that any party that may seek indemnification is entitled to indemnification under the terms of such indemnification provisions or is intended to effectuate the survival of any indemnification obligations for any party other than the current and former members of any Governing Body, directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of, or acting on behalf of, the Debtors; *provided*, *further*, that any indemnification obligations owed to Non-Released Parties with respect to the Non-Released Claims shall not be Reinstated and shall not be honored. For the

avoidance of doubt, following the Effective Date, the Reorganized Debtors will not terminate or otherwise reduce the coverage under any directors' and officers' insurance policies (including any "tail policy") in effect or purchased as of the Petition Date, and all members, managers, directors, and officers of the Debtors who served in such capacity at any time prior to the Effective Date or any other individuals covered by such insurance policies, will be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such members, managers, directors, officers, or other individuals remain in such positions after the Effective Date. Notwithstanding anything to the contrary in the Plan, if any Releasing Party (including its successors and assigns, including, without limitation, any estate, receiver, trustee, debtor-in-possession, or other Person), including the Reorganized Debtors, seeks to pursue any Non-Released Claim against a Non-Released Party which results in any Claim, including a Claim for indemnification, against any Released Party, each Releasing Party, including the Reorganized Debtors, agrees that it shall not pursue or recover any funds, property, or other value received, awarded, or arising from settlement, judgment, or other resolution of such actual or threatened Non-Released Claim and if so pursued or recovered shall assign any such recoveries exclusively to, and hold them in trust exclusively for, such Released Party.

100. **Restructuring Transactions**. On or before the Effective Date, or as soon as reasonably practicable thereafter, the applicable Debtors (in accordance with any applicable consent or approval rights under the RSA as in effect on such date) or the Reorganized Debtors, as applicable, shall consummate the Restructuring Transactions and are authorized in all respects to take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan that are consistent with and pursuant to the terms and conditions of the Plan and the RSA, which may include, as applicable:

(a) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, formation, organization, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan, the Plan Supplement, and the RSA; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan, the Plan Supplement, and the RSA, and having other terms for which the applicable Entities may agree; (c) the execution, delivery, and filing, if applicable, of appropriate certificates or articles of incorporation, formation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state Law, including any applicable Corporate Governance Documents; (d) the issuance and distribution of the New Equity Interests, including the New Equity Interests issued in connection with the Exit Term Loan Facility Backstop Commitment Premium; (e) the consummation of the Exit Facilities, including the execution, delivery, and filing of all Exit Facility Documents; (f) such other transactions that are required to effectuate the Restructuring Transactions, including any transactions set forth in the Restructuring Transactions Memorandum, and (g) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law in connection with the Plan.

101. **Vesting of Assets in the Reorganized Debtors**. Except as otherwise provided in this Confirmation Order, the Plan, or any agreement, instrument, or other document incorporated in, or entered into in connection with or pursuant to, the Plan or Plan Supplement, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each respective Reorganized Debtor, free and clear of all

Liens, Claims, charges, Causes of Action, or other encumbrances. On and after the Effective Date, except as otherwise provided in the Plan, this Confirmation Order, or any agreement, instrument, or other document incorporated into the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. For the avoidance of doubt, no Reorganized Debtor (including any Reorganized Debtor ultimately being wound down and liquidated in connection with the Restructuring Transactions, including as set forth in the Restructuring Transactions Memorandum) shall be treated as being liable on any Claim that is discharged pursuant to the Plan.

102. **Assumption and Assignment of Contracts and Leases**. The Debtors have exercised sound business judgment in determining whether to reject or assume each of their Executory Contracts and Unexpired Leases pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, Article V of the Plan, and as set forth in the Plan Supplement.

103. The provisions governing the treatment of Executory Contracts and Unexpired Leases set forth in Article V of the Plan (including the procedures regarding the resolution of any and all disputes concerning the assumption of such Executory Contracts and Unexpired Leases) shall be, and hereby are, approved in their entirety.

104. Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise and full payment of any applicable Cure pursuant to Article V.C of the Plan shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership

interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.

105. **Insurance Policies**. Each of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under the Plan. Unless otherwise provided in the Plan, on the Effective Date, (a) the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims, including all D&O Liability Insurance Policies, and (b) such insurance policies and any agreements, documents, or instruments relating thereto shall revest in the Reorganized Debtors.

106. **Approval of MIP**. The Reorganized Debtors are authorized to adopt and implement the MIP in accordance with Article IV.Q of the Plan.

107. **Provisions Governing Distributions**. The distribution provisions of Article VI of the Plan shall be, and hereby are, approved in their entirety. Except as otherwise set forth in the Plan or this Confirmation Order, the Disbursing Agent shall make all distributions required under the Plan. The timing of distributions required under the Plan or this Confirmation Order shall be made in accordance with, and as set forth in, the Plan or this Confirmation Order, as applicable.

108. **Corporate Governance Documents and the Issuance of New Equity Interests**. The terms of the Corporate Governance Documents, including the New Investor Agreement, in each case as may be amended, restated, amended and restated, supplemented, or modified on or before the Effective Date consistent with the Plan and the RSA, are approved in all respects. The obligations of the applicable Reorganized Debtors related thereto will, upon execution, constitute legal, valid, binding, and authorized obligations of each of the Debtors or the Reorganized Debtors, as applicable, enforceable in accordance with their terms and not in contravention of any state,

federal, or foreign Law. To the extent applicable, entry of this Confirmation Order shall be deemed approval of the Corporate Governance Documents, to the extent not approved by the Bankruptcy Court previously. Additionally, on or prior to the Effective Date, Reorganized Parent shall take steps to provide that the New Equity Interests are issued and/or transferred in accordance with the terms of the Plan, the Plan Supplement, the Corporate Governance Documents, and applicable Law (including applicable securities Laws). On the Effective Date, without any further action by the Bankruptcy Court or the directors, officers, or equity holders of any of the Reorganized Debtors, each Reorganized Debtor, as applicable, will be and is authorized to enter into the Corporate Governance Documents and all related documents to which such Reorganized Debtor is contemplated to be a party on the Effective Date.

109. In addition, on the Effective Date, without any further action by the Bankruptcy Court or the directors, officers, or equity holders of any of the Reorganized Debtors, each applicable Reorganized Debtor will be and is authorized to: (a) execute, deliver, file, and record any other contracts, assignments, certificates, instruments, agreements, guaranties, or other documents executed or delivered in connection with the Corporate Governance Documents and the New Equity Interests; (b) issue the New Equity Interests; (c) perform all of its obligations under the Corporate Governance Documents; and (d) take all such other actions as any of the responsible officers of such Reorganized Debtor may determine are necessary, appropriate, or desirable in connection with the consummation of the transactions contemplated by the Corporate Governance Documents and for the issuance of the New Equity Interests. Notwithstanding anything to the contrary in this Confirmation Order or Article XI of the Plan, after the Effective Date, any disputes arising under the Corporate Governance Documents will be governed by the jurisdictional provisions therein. For the avoidance of doubt, any Entity's acceptance of the New

Equity Interests shall be deemed as its agreement to be bound by the Corporate Governance Documents, as the same may be amended or modified from time to time following the Effective Date in accordance with their terms. As a condition to receiving the New Equity Interests, all recipients of New Equity Interests pursuant to the MIP and the Exit Term Loan Facility Backstop Commitment Premium, shall be required to execute and deliver the New Investor Agreement; *provided, however*, that acceptance of such New Equity Interests constitutes deemed acceptance and consent to the terms of the New Investor Agreement, without the need for execution by any party thereto. The New Investor Agreement will be effective as of the Effective Date, and, as of such date, will be deemed to be valid, binding, and enforceable in accordance with its terms, and each holder of New Equity Interests will be bound thereby in all respects.

110. **Notice of Subsequent Pleadings**. Except as otherwise provided in the Plan or in this Confirmation Order, notice of all subsequent pleadings in the Chapter 11 Cases after the Effective Date will be limited to the following parties: (a) the Reorganized Debtors and their counsel; (b) the U.S. Trustee; (c) counsel to the Ad Hoc Group; (d) counsel to SVP; (e) any party known to be directly affected by the relief sought by such pleadings; and (f) any party that specifically requests additional notice in writing to the Debtors or Reorganized Debtors, as applicable, or files a request for notice under Bankruptcy Rule 2002 after the Effective Date. The Solicitation Agent shall not be required to file updated service lists.

111. **Release, Exculpation, Discharge, and Injunction Provisions**. The release, exculpation, discharge, injunction, and related provisions set forth in Article VIII of the Plan shall be, and hereby are, approved and authorized in their entirety, including, but not limited to:

a. *Debtor Release*. The Debtor Release set forth in Article VIII.C of the Plan is hereby approved.

b. *Third-Party Release*. The Third-Party Release set forth in Article VIII.D of the Plan is hereby approved.

c. *Exculpation*. The Exculpation set forth in Article VIII.E of the Plan is hereby approved.

d. *Injunction*. The Injunction set forth in Article VIII.F of the Plan is hereby approved.

112. Entry of this Confirmation Order constitutes the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, constitutes the Bankruptcy Court's finding that the Debtor Release is: (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the claims or Causes of Action released by the Debtor Release; (iii) in the best interests of the Debtors, the Estates, and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after reasonable investigation by the Debtors and after notice and opportunity for hearing; and (vi) a bar to any of the Debtors, the Reorganized Debtors, or the Estates asserting any claim or Cause of Action released by the Debtor Release against any of the Released Parties.

113. Entry of this Confirmation Order constitutes the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, constitutes the Bankruptcy Court's finding that the Third-Party Release is: (i) consensual; (ii) essential to the Confirmation; (iii) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the restructuring and implementing this Plan; (iv) a good faith settlement and compromise of the claims or Causes of Action released by the Third-Party Release; (v) in the best interests of the Debtors and their Estates; (vi) fair, equitable, and reasonable; (vii) given and made after due notice and opportunity for hearing; and (viii) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

114. **Preservation of Causes of Action**. Except as otherwise provided in the Plan or this Confirmation Order, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action of the Debtors, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Reorganized Debtors' rights to commence, prosecute, or settle such retained Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date or any other provision of the Plan to the contrary, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including in Article VIII thereof, which shall be deemed released and waived by the Debtors and the Reorganized Debtors as of the Effective Date.

115. The provisions regarding the preservation of Causes of Action in Article IV.R of the Plan are approved in their entirety, are appropriate, fair, equitable, and reasonable, and are in the best interests of the Debtors and their Estates.

116. **Lien Releases.** The Lien Releases set forth in Article VIII.B of the Plan are hereby approved. The Holders of mortgages, deeds of trust, Liens, pledges, or other security interests subject to release pursuant to Article VIII.B shall execute such documents as may be reasonably requested by the Debtors or the Reorganized Debtors, as applicable, to reflect or effectuate such Lien Releases, and all of the right, title, and interest of any Holders of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the applicable Reorganized Debtor and its successors and assigns.

117. **Professional Fee Escrow Account**. No later than the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Amount. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals until all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full pursuant to one or more Final Orders. Such funds shall not be considered property of the Estates of the Debtors or the Reorganized Debtors.

118. The amount of Allowed Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Reorganized Debtors from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed; *provided* that the Debtors' and the Reorganized Debtors' obligations to pay Allowed Professional Fee Claims shall not be limited nor be deemed limited to funds held in the Professional Fee Escrow Account. When all such Allowed Professional Fee Claims have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be transferred to the Reorganized Debtors without any further notice to or action, order, or approval of the Bankruptcy Court.

119. From and after the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 363 of the Bankruptcy Code in seeking compensation for services rendered after such date after such date shall terminate, and the Debtors or the Reorganized Debtors, as applicable, may pay the reasonable and documented fees and expenses of any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

120. **Payment of Statutory Fees**. All Quarterly Fees due and payable prior to the Effective Date, shall be paid by the Debtors on the Effective Date. After the Effective Date, the Debtors and the Reorganized Debtors shall be jointly and severally liable to pay any and all

Quarterly Fees when due and payable. The Debtors and the Reorganized Debtors shall remain obligated to pay Quarterly Fees to the Office of the U.S. Trustee until the earliest of the Debtor's case being closed, dismissed or converted to a case under chapter 7 of the Bankruptcy Code. The U.S. Trustee shall not be required to file any Administrative Claim in the case, and shall not be treated as providing any release under the Plan.

121. **Section 1146(a) Exemption**. To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Reorganized Debtor or to any other Person) of property under the Plan or pursuant to (a) the issuance, distribution, transfer, or exchange of any debt, Equity Security, or other interest in the Debtors or the Reorganized Debtors, including the New Equity Interests, (b) the Restructuring Transactions, (c) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means, (d) the making, assignment, or recording of any lease or sublease, (e) the grant of collateral as security for the Reorganized Debtors' obligations under and in connection with the Exit Facilities, or (f) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, personal property transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of this Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing

and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

122. **Distributions Exempt from Securities Laws**. Pursuant to section 1145 of the Bankruptcy Code, or, to the extent that section 1145 of the Bankruptcy Code is either not permitted or not applicable, section 4(a)(2) of the Securities Act, Regulation D promulgated thereunder, Regulation S under the Securities Act, and/or other available exemptions from registration, the offering, issuance, and distribution of the New Equity Interests as contemplated herein shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable U.S. federal, state, or local laws requiring registration prior to the offering, issuance, distribution, or sale of Securities.

123. The shares of New Equity Interests to be issued under the Plan on account of Allowed Claims in accordance with, and pursuant to, section 1145 of the Bankruptcy Code will be freely transferable under the Securities Act by the recipients thereof, subject to: (a) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 1145(b) of the Bankruptcy Code, and compliance with applicable securities laws and any rules and regulations of the United States Securities and Exchange Commission or state or local securities laws, if any, applicable at the time of any future transfer of such Securities or instruments; and (b) any restrictions on the transferability of such New Equity Interests in the Corporate

Governance Documents.

124. The shares of New Equity Interests that may be issued pursuant to the exemption from registration set forth in section 4(a)(2) of the Securities Act, Regulation D promulgated thereunder, Regulation S under the Securities Act, and/or other available exemptions from registration will be considered "restricted securities," will bear customary legends and transfer restrictions, and may not be transferred except pursuant to an effective registration statement or under an available exemption from the registration requirements of the Securities Act and subject to any restrictions on the transferability of such New Equity Interests in the Corporate Governance Documents.

125. **Waiver of Section 341(e) Meeting and Certain Filings and Reporting**. Subject to the occurrence of the Effective Date on or before November 22, 2024, the following are hereby permanently waived: (a) the requirement that the U.S. Trustee convene a meeting of creditors or equity holders pursuant to section 341(e) of the Bankruptcy Code; (b) the requirements that the Debtors file Schedules, SOFAs, and 2015.3 Reports (each as defined in the Scheduling Motion); and (c) any other requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtors to file any list, schedule, or statement with the Bankruptcy Court or U.S. Trustee as to any such list, schedule, or statement not filed as of the entry of this Confirmation Order.

126. The Reorganized Debtors shall timely file all required monthly operating reports and post-confirmation quarterly reports in a form prescribed by the U.S. Trustee until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

127. **Authorization to Consummate**. The Debtors are authorized to consummate the Plan in accordance with its terms at any time after the entry of this Confirmation Order, subject to the satisfaction or waiver of the conditions precedent in Article IX of the Plan. The Debtors or Reorganized Debtors, as applicable, including their officers, managers, and directors (including the members of the New Board, as applicable), are hereby immediately authorized, without further application to or order of the Bankruptcy Court, to enter into and effectuate the Restructuring Transactions and to take any and all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan and the Restructuring Transactions to the extent consistent with the Plan (including the consent rights therein) and the RSA (subject to the applicable consent and consultation rights set forth therein). To the extent not approved by the Bankruptcy Court previously, entry of this Confirmation Order shall be deemed approval of the Restructuring Transactions (including each of the transactions and related agreements contemplated thereby), and all actions to be taken, undertakings to be made, and obligations to be incurred and fees and expenses to be paid by the Debtors or the Reorganized Debtors, as applicable, in connection therewith are hereby effective and authorized to be taken.

128. **Government Approvals Not Required**. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state, federal, or other governmental authority with respect to the dissemination, implementation, or consummation of the Plan and the Disclosure Statement, any certifications, documents, instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

129. **Directors and Officers of the Reorganized Debtors**. In accordance with Article IV.K of the Plan, on the Effective Date, the term of each of the current members of the boards of directors or other Governing Body of each of the Debtors shall expire, such current directors shall be deemed to have resigned, and all of the directors for the initial term of the New Board and the other Governing Bodies shall be appointed in accordance with the Corporate Governance Documents. The known members of the New Board and the officers of the Reorganized Debtors are identified in the Plan Supplement. Each such member and officer of the Reorganized Debtors shall serve from and after the Effective Date pursuant to the terms of the applicable Corporate Governance Documents and other constituent documents of the Reorganized Debtors. The manner of selection of the officers, directors, or trustees (or any successor of any officer, director, or trustee) of the Reorganized Debtors is consistent with the interests of all Holders of Claims and Interests and with public policy.

130. **Post-Confirmation Modifications**. Without the need for further order or authorization of the Bankruptcy Court, the Debtors or the Reorganized Debtors, as applicable, are authorized and empowered to make any and all modifications to any and all documents that are necessary to effectuate the Plan that do not materially modify the terms of such documents and are consistent with the Plan and RSA until the occurrence of the Effective Date.

131. **Applicable Nonbankruptcy Law**. To the fullest extent permitted by applicable law, the provisions of this Confirmation Order, the Plan and related documents, or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy Law.

132. **Notices of Confirmation and the Effective Date**. As soon as practicable following entry of this Confirmation Order, the Reorganized Debtors shall serve on all parties in interest a notice of entry of this Confirmation Order, substantially in the form attached hereto as **Exhibit B** (the "Confirmation Notice") in accordance with Bankruptcy Rules 2002 and 3020(c). As soon as reasonably practicable after the Effective Date, the Reorganized Debtors shall file notice of the Effective Date and shall serve a copy of the same on all parties in interest. The notice of the Effective Date may be included in this Confirmation Notice. Notwithstanding the above, no notice of Confirmation or Consummation or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed the Confirmation Hearing Notice, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address. The above-referenced notices are adequate under the particular circumstances of the Chapter 11 Cases and no other or further notice is necessary.

133. The Confirmation Notice shall constitute sufficient notice of the entry of this Confirmation Order to any filing and recording officers and shall be a recordable instrument notwithstanding any contrary provision of applicable nonbankruptcy law.

134. **Failure of Consummation**. If Consummation does not occur, the Plan and the findings in this Confirmation Order shall be null and void in all respects and nothing contained in the RSA, the Plan, or the Disclosure Statement shall: (a) constitute a waiver or release by the Debtors or any Holder of Claims or Interests of any Claim or Interest; (b) prejudice in any manner the rights of the Debtors, any Holders of Claims or Interests, or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking by the Debtors, any Holders of Claims or

Interests, or any other Entity, respectively; *provided* that all provisions of the RSA that survive termination thereof shall remain in effect in accordance with the terms thereof.

135. **Substantial Consummation**. On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

136. **Immediate Binding Effect**. Subject to Article IX.A of the Plan and notwithstanding Bankruptcy Rules 3020(c), 6004(h), 7062, or 9014, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan (including, for the avoidance of doubt, the documents and instruments contained in the Plan Supplement) shall be immediately effective and enforceable and deemed binding upon the Debtors, Reorganized Debtors, and any and all Holders of Claims or Interests (irrespective of whether such Holders of Claims or Interests are deemed to have accepted this Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in this Plan, each Entity acquiring property under this Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

137. **Legacy Notes Settlement**. Entry of this Confirmation Order constitutes approval of the Legacy Notes Settlement, as set forth in this Confirmation Order and the Plan, as well as a finding by the Bankruptcy Court that such settlement is in the best interest of the Debtors, the Reorganized Debtors, and their Estates under Bankruptcy Rule 9019.

138. **Provisions Regarding Max-Trac**. Notwithstanding the language in Article VIII.B of the Plan, the liens and security interests granted prior to the Petition Date to Max-Trac Tire Co., Inc., dba Mickey Thompson Tires ("Max-Trac") pursuant to the (i) Independent Dealer Agreement dated January 1, 2024, by and between Max-Trac and Wheel Pros, LLC and (ii) Purchase Money Security Agreement dated November 30, 2023, by and between Max-Trac and Wheel Pros, each

as perfected by the filing of UCC-1 financing statements with the Delaware Secretary of State, shall continue with the same force and effect as existed immediately prior to the Petition Date and shall continue thereafter as if the Chapter 11 Cases did not occur (the "Max-Trac Liens"). The Max-Trac Liens shall continue to be perfected to the same extent, validity, and priority as existed prior to the Petition Date and thereafter as if the Chapter 11 Cases did not occur, without the need for Max-Trac to file any further financing statements or take any further action, except to the extent that Max-Trac shall be authorized to file any continuation statement(s) necessary to continue the perfection of the Max-Trac Liens to the extent the effectiveness of any existing UCC-1 financing statement lapses after the Effective Date.

139. **Provisions Regarding Chubb**. Notwithstanding anything to the contrary in the Definitive Documents, the RSA, any other document related to any of the foregoing, or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or supervening, grants an injunction, discharge or release, confers Bankruptcy Court jurisdiction, or requires a party to opt out of any releases):

a. on the Effective Date, all of the insurance policies which have been issued by ACE American Insurance Company, Federal Insurance Company and any of their respective U.S.-based affiliates and predecessors (collectively, and solely in their capacities as insurers and third party administrators, the "Chubb Companies") to, or which provide coverage to, any of the Debtors (or any of their predecessors) at any time and for any line of coverage (collectively and together with any agreements, documents or instruments related thereto and each as amended, modified or supplemented and including any exhibit or addenda thereto, the "Chubb Insurance Program") shall be assumed by the Debtors and assigned to the Reorganized Debtors, jointly and severally, in their entireties pursuant to sections 105 and 365 of the Bankruptcy Code, and shall continue in full force and effect thereafter in accordance with their respective terms;

b. on and after the Effective Date, the Reorganized Debtors shall become and remain liable in full for all of their and the Debtors' obligations under the Chubb Insurance Program, regardless of whether such obligations arise before or after the Effective Date, and without the need or requirement for the Chubb Companies file a Proof of Claim or an Administrative Claim, Cure claim, Cure objection, or provide any

notice of recoupment; but in each case subject to the Debtors' or Reorganized Debtors' (as applicable) rights and defenses under the Chubb Insurance Program;

c. nothing alters, modifies or otherwise amends the terms and conditions of the Chubb Insurance Program, and any rights and obligations thereunder shall be determined under the Chubb Insurance Program and applicable non-bankruptcy law as if the Chapter 11 Cases had not occurred;

d. except as expressly set forth in subpart (a) hereof, nothing shall permit or otherwise effectuate a sale, assignment or other transfer of the Chubb Insurance Program and/or any rights, benefits, claims, proceeds, rights to payment, or recoveries under and/or relating to the Chubb Insurance Program without the prior express written consent of the Chubb Companies; and

e. on and after the Effective Date, the automatic stay of Bankruptcy Code section 362(a) and the injunctions set forth in Article VIII.F of the Plan, if and to the extent applicable, shall be deemed lifted without further order of this Bankruptcy Court, solely to permit: (i) claimants with valid workers' compensation claims or direct action claims against the Chubb Companies under applicable non-bankruptcy law to proceed with their claims; (ii) the Chubb Companies to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of this Bankruptcy Court, (a) workers' compensation claims, (b) claims where a claimant asserts a direct claim against the Chubb Companies under applicable non-bankruptcy law, or an order has been entered by this Bankruptcy Court granting a claimant relief from the automatic stay or the injunctions set forth in Article VIII.F of the Plan to proceed with its claim, and (c) all costs in relation to each of the foregoing; (iii) the Chubb Companies to cancel any policies under the Chubb Insurance Program, and take, in their sole discretion, any other actions relating to the Chubb Insurance Program (including effectuating a setoff), to the extent permissible under applicable non-bankruptcy law, and/or the Chubb Insurance Program.

140. **Provisions Regarding Texas Taxing Authorities**. To the extent a purchaser has not assumed the 2024 *ad valorem* tax liability of a Texas Taxing Authority[4] jurisdiction pursuant to a sale order, the Debtors or Reorganized Debtors shall pay the 2024 Texas Taxing Authorities' *ad valorem* tax liabilities in the ordinary course of business prior to the state law delinquency date. If the Debtors or Reorganized Debtors fail to do so, penalties and interest under the Texas Property

[4] "Texas Taxing Authorities" means Bexar County, Brazoria County, Dallas County, City of Frisco, City of Houston, Parker County Appraisal District, Tarrant County, Plano Independent School District, Spring Branch Independent School District, Frisco Independent School District, Denton County, Comal County, Guadalupe County, and any other local tax authority in the State of Texas.

Tax Code shall accrue and be due thereon. All 2024 *ad valorem* tax liens of the Texas Taxing Authorities shall remain attached to the Debtors' retained assets until the applicable 2024 tax liabilities thereon have been fully paid.

141. **Provisions Regarding Elite Wheel**. Elite Wheel Distributors, Inc. ("Elite Wheel") is not a Releasing Party and is not a Released Party. Any claims asserted by Elite Wheel against Debtor Wheel Pros, LLC in Case No. 8:23-cv-00930-KKM-CPT (the "Elite Wheel Litigation"), which remains pending in the United States District Court for the Middle District of Florida, are unliquidated Class 7 General Unsecured Claims (the "Elite Wheel Claims"). On the Effective Date, the Elite Wheel Claims asserted in the Elite Wheel Litigation (i) shall be Reinstated as provided for by Article III.V.7 of the Plan, and (ii) may be fully asserted in the Elite Wheel Litigation following the Effective Date, with all rights of Elite Wheels expressly reserved. The Debtors reserve all rights and defenses related to the Elite Wheel Litigation and the Elite Wheel Claims. Any obligations imposed on Debtor Wheel Pros, LLC pursuant to a final, non-appealable judgment in the Elite Wheel Litigation shall automatically become the obligations of the Reorganized Debtors without further action of Elite Wheel and shall be payable in the ordinary course of business. Upon the occurrence of the Effective Date, (1) Elite Wheels shall not be subject to the discharge provision set forth in Article VIII.A of the Plan or the injunction set forth in Article VIII.F of the Plan; and (2) consistent with Article XII.F of the Plan, the automatic stay under 11 U.S.C. 362 shall be lifted to permit Elite Wheels to proceed with the Elite Wheels Litigation.

142. **Provisions Regarding Cintas**. The National Rental Agreement (the "Cintas Agreement") by and among Cintas Corporation No. 2 ("Cintas") and Debtor Wheel Pros, LLC shall be assumed by the Debtors. Pursuant to Article V.C of the Plan (i) the applicable Cure owing

on account of the Cintas Agreement, if any, shall be paid by the Debtors or the Reorganized Debtors on the Effective Date or as soon as reasonably practicable thereafter, and (ii) Cintas reserves all rights to File, with the Bankruptcy Court, a request for payment of such Cure if the Cure proposed by the Debtors or the Reorganized Debtors differs from that set forth in the Reservation of Rights and Statement of Cure Amount filed by Cintas [Docket No. 186].

143. **Provisions Regarding Nitto Tire**. Notwithstanding the language in Article VIII.B of the Plan, this Confirmation Order, the DIP Orders, or the DIP Documents:

a. the liens and security interests granted prior to the Petition Date to: (i) Nitto Tire U.S.A. ., Inc. ("Nitto Tire"), pursuant to the Purchase Money Security Agreement dated February 2, 2010, by and between Nitto Tire and Wheel Pros, LLC; (ii) Toyo Tire U.S.A. Corp. ("Toyo Tire" and together with Nitto Tire, the "Toyo Parties"), pursuant to the Purchase Money Security Agreement dated February 27, 2013, by and between Toyo Tire and TAP Worldwide, LLC; and (iii) Toyo Tire, pursuant to the Purchase Money Security Agreement dated November 7, 2022, by and between Toyo Tire and Wheel Pros, LLC, each as perfected by the filing of UCC-1 financing statements with the Delaware Secretary of State, shall continue with the same force and effect as existed immediately prior to the Petition Date and shall continue thereafter as to all goods sold and/or delivered to the Debtors at any time, subject to the terms and conditions set forth in (x) that certain Toyo Tire U.S.A. Corp. Appointment Letter dated November 7, 2022, by and between Toyo Tire and Wheel Pros, LLC, (y) that certain Dealer Agreement, by and between Toyo Tire Canada Inc. and American Racing Equipment Inc., and (z) that certain letter from Nitto Tire dated December 29, 2023, regarding the "2024 Nitto Bonus & Incentive Programs," each as applicable, as if these Chapter 11 Cases did not occur (the "Toyo Parties' Liens"); and

b. the Toyo Parties' Liens shall continue to be perfected in all goods sold and/or delivered to the Debtors to the same extent, validity, and priority as existed prior to the Petition Date and thereafter as if these Chapter 11 Cases did not occur, without the need for the Toyo Parties to file any further financing statements or take any further action, provided however, that the Toyo Parties shall be authorized to file any continuation statement(s) necessary to continue the perfection of the Toyo Parties Liens to the extent the effectiveness of any existing UCC-1 financing statement lapses after the Effective Date.

Nothing in the Plan, this Confirmation Order, the DIP Orders, or the DIP Documents amend or modify any agreements between the Toyo Parties and the Debtors or otherwise impair or affect any of the Toyo Parties' rights under any agreements between the Debtors and the Toyo

Parties, or the Toyo Parties' right to take all actions to take, confirm, perfect and enforce security interests in goods sold and/or delivered to the Debtors pursuant to applicable law.

144. **Headings**. Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

145. **References to and Omissions of Plan Provisions**. References to articles, sections, and provisions of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan. The failure to specifically include or to refer to any particular article, section, or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Bankruptcy Court that the Plan be confirmed in its entirety, except as expressly modified herein, and incorporated herein by this reference.

146. **Effect of Conflict**. This Confirmation Order supersedes any Bankruptcy Court order issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order. If there is any inconsistency between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall govern and control.

147. **Reporting**. After the Effective Date, the Debtors or the Reorganized Debtors, as applicable, shall have no obligation to provide any reports to any parties otherwise required under the "first" and "second" day orders entered in the Chapter 11 Cases, including the DIP Orders.

148. **Final Order**. This Confirmation Order is a final order and the period in which an appeal must be filed will commence upon entry of this Confirmation Order.

149. **Retention of Jurisdiction**. The Bankruptcy Court may properly, and upon the Effective Date, to the full extent set forth in the Plan and otherwise consistent with applicable law and subject to the terms of applicable Plan Supplement documents, shall, retain jurisdiction over

all matters arising out of, and related to, these Chapter 11 Cases, including (to the extent consistent with applicable law) the matters set forth in Article XI of the Plan and section 1142 of the Bankruptcy Code; *provided, however*, that consistent with Article VII of the Plan, the Reorganized Debtors may resolve any disputes with respect to the Allowed amount of a Holder's claims through judicial means outside the jurisdiction of this Bankruptcy Court to the extent any such dispute cannot be resolved consensually.

**Dated: October 15th, 2024**
**Wilmington, Delaware**

**JOHN T. DORSEY**
**UNITED STATES BANKRUPTCY JUDGE**